No. 14520

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

ROBERT S. FOSTER,

Petitioner and Respondent,

-vs-

CITY COMMISSION OF AND FOR THE
CITY OF BOZEMAN, et al.,

Respondents and Appellants.

Appeal from: District Court of the Eighteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellants:

Berg, Morgan, Coil and Stokes, Bozeman, Montana
Ben E. Berg argued, Bozeman, Montana

For Respondent:

Joseph W. Sabol argued, Bozeman, Montana

Submitted: September 13, 1979

Decided: AUG 8 - 1980

Filed: AUG 8 - 1980

Thomas Jc. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The Bozeman City Commission appeals from an order of the Gallatin County District Court which granted a writ of mandamus to Robert S. Foster and directed the Bozeman City Commission to hold a rehearing on Foster's request for a master plan zone change, to keep a full record of the rehearing, and to issue written findings in support of its decision.

The central controversy arises from a denial on May 10, 1978, by the City Commission of Foster's request that his forty acres of land be changed from an agricultural-suburban zoning classification (which permits subdivisions of no less than ten acres) to a single family residential zoning classification. Upon receipt of this adverse decision, Foster, through his attorney, demanded a rehearing of his rezoning request and alleged that the City Commission had engaged in several procedural irregularities with reference to its previous hearings. On May 24, 1978 the City Commission denied Foster's demand for a rehearing on the merits, and on May 25, 1978, Foster obtained an alternative writ of mandate from the District Court. The alternative writ ordered that Foster either be granted a rehearing or that the City Commission show cause why it had not complied with the court order. The City Commission chose to show cause. After an evidentiary hearing, the District Court issued a writ of mandate ordering the City Commission to grant a rehearing on the merits and to comply with the procedural requirements of an adjudicatory proceeding.

In applying for a writ of mandamus Foster acknowledged that a writ of review (certiorari) is normally the appropriate and adequate remedy by which to test the legality of the

-2-

proceedings before the City Commission. He alleged, however, that in this case a writ of review is not adequate because the City Commission had failed to keep a verbatim record of its proceedings had in relation to the Foster rezoning application and had failed to enter findings of fact in support of its decision. Thus Foster contended, there was essentially nothing for the District Court to review, and that the only adequate remedy would be a writ commanding the City Commission to hold another hearing on the merits together with the procedural safeguards he contends were denied him at the initial hearings.

In applying for a writ of mandamus, Foster framed his complaint in seven counts, but the central contention is that after the May 3 hearing and before the May 10 decisional meeting of the City Commission, the city manager circulated a secret memorandum to the Commission members which was calculated to and did deprive Foster of his rights to a fair hearing on his rezoning application. He contends that he did not have a chance to respond to or rebut the matter contained in the secret memo before the City Commission made its decision at the May 10 meeting.

Accompanying this central contention is his claim that the City Commission failed to keep a verbatim record of its May 3 and May 10 meetings in relation to the rezoning application, and that the City Commission had failed to enter written findings in support of its decision denying the rezoning application. Essentially, Foster argues that the failure to keep a hearing record and to enter findings, effectively deprived him of the right to seek judicial review of the City Commission's decision denying his rezoning application. He therefore claims that he was deprived of due process of law.

Based on his underlying contention that the City Commission had a duty to keep a full hearing record and to enter written findings, it is impossible to determine whether the City did in fact rely on the secret memo circulated by the city manager. Because the City Commission denied Foster's request for a rehearing, he argues that the only remedy to cure the due process violations is for a court to order the City Commission to rehear the case on the merits.

The District Court held an evidentiary hearing on his complaint and then issued a writ of mandamus directing the City Commission to hold a rehearing on the merits. Findings of fact and conclusions of law were entered, and a supporting memorandum was filed by the District Court. The District Court ordered the City Commission to immediately hold a rehearing on the merits of Foster's rezoning application, to keep a verbatim hearing record of all evidence introduced, both oral and documentary, and to issue written findings in support of its decision based on the testimony and documentary evidence introduced at the hearing. The City Commission appeals from this order.

The District Court ruled that the proceedings involved were adjudicative in nature rather than legislative, and for this reason, that the City Commission must keep a verbatim record and enter written findings in support of its decision. The statutory framework was not considered at all. Rather, the District Court concluded that under the rationale of Lowe v. City of Missoula (1974), 165 Mont. 38, 525 P.2d 551, the proceedings were adjudicative rather that legislative. In reaching the issue of the so-called secret memo, the District Court ruled that absent written findings, it could not be determined whether the City Commission had in fact

relied on the memoranda circulated by the city manager. This being so, the District Court concluded that the only remedy was to order a rehearing on the merits coupled with the procedural safeguards set forth.

Boiled down to the essentials, the City Commission contends that when acting on the forty acre rezoning application it was acting in a legislative capacity rather than in an adjudicative or quasi-judicial capacity. Thus it contends that the District Court had no right to impose procedures on its activities which are applicable to quasi-judicial functions, such as keeping a verbatim record of the proceedings and making findings of fact in support of its decision. From this essential premise, the City argues that since it is not required by statute to grant rehearings from denials of rezoning applications, the decision as to whether it will do so is discretionary. Because a writ of mandamus will not issue to control a discretionary act, the City thus argues that mandamus could not properly issue to compel it to grant a rehearing on the merits to Foster. Although other issues exist, we believe that the underlying issue is whether the proceedings involved here are such that standards in relation to quasi-judicial proceedings should be imposed.

For reasons which we will fully explain, we determine that the writ of mandamus was not a proper remedy in this case and that it was, moreover, entered without proper con- sideration of the actual state of the procedural record and of Foster's action or inaction in creating that record. The facts do not permit us to extricate him from the situation which he helped to create. Before commencing our analysis, however, we first set forth the factual background leading to the dispute involved here.

-5-

The forty acres involved is outside the Bozeman city limits but within the jurisdiction of the City Commission and the City-County Planning Board and the Zoning Commission. In October 1977, Foster initially filed an application with the Bozeman City Commission to rezone his land from agricultural-suburban to single family residential. The City Commission initially referred this request to the City-County Planning Board and the Zoning Board. Each of these Boards held hearings and each recommended that the petition for rezoning be denied. The primary reason given for the denial recommendation was that the master plan would be revised in the near future and therefore any present zoning changes would be precipitous.

On or about December 20, 1977, the City Commission conducted a public hearing on Foster's request for a rezone. No members of the public appeared in support of or in opposition to the requested zone change. The City Commission denied Foster's rezoning request pending initial consideration and recommendations by the City-County Planning Board. It appears that all concerned believed that a master plan change would be forthcoming.

On March 8, 1978, Foster went to the City Commission and asked it when the changes in the master plan could be expected. Having no answer for Foster, the City Commission decided that it had better consider Foster's rezoning request on the merits without regard to a future change in the master plan. As preliminary steps, the City Commission referred the latter to the City-County Planning Board and to the Zoning Commission, and asked each body to consider Foster's rezoning application on the merits and to forward their recommendations to the City Commission. Each of the

-6-

Boards held hearings and each forwarded its recommendations to the City Commission, but with different conclusions. The City-County Planning Board recommended against the zoning change but the Zoning Board recommended in favor of the zoning change.

On May 3, 1978, the City Commission held its hearing on the requested zoning change. The record before us together with admissions from Foster's attorney in response to questions from the bench during the hearing of this appeal, supports the conclusion that a court reporter, at the request of Foster's attorney, reported the May 3 hearing in relation to Foster's rezoning application. Foster and his attorney fully participated in the hearing.

One of the opponents of the rezoning application was Joel Shouse, a member of the City-County Planning Board, and also one of the members of a committee which drafted a report concerning the water supply and water table in the Gallatin Valley. The report, entitled 'Blue Ribbons Draft Final Report", had already been publicly released and was available to the general public upon request. Shouse testified in detail concerning his fears that water pollution would result if a rezone were granted. He was particularly concerned about the nitrate pollution which would appear in the ground water if the property was rezoned for residential use. During his testimony, Shouse frequently referred to the Blue Ribbons Report. Neither Foster nor his attorney objected to Shouse's testimony. Foster's attorney questioned Shouse extensively concerning his conclusions that the rezoning should not be granted.

The City Commission did not vote on the Foster rezoning application on May 3, but decided rather that it would render its decision on May 10, the next regular weekly

meeting of the Commission. The allegation that the City Commission later considered evidence not presented at this May 3 hearing, arose in relation to an agenda of the May 10 meeting circulated on May 9 to the City Commission members by the city manager.

It is the custom of the city manager to prepare an agenda and circulate it to each commission member before the weekly meeting. The Foster rezoning application was one of several items on the agenda. In the agenda, the city manager recommended to the City Commission that it deny Foster's rezoning application and he set forth his response. Also appended to the agenda was a letter from Joel Shouse and the report of the Blue Ribbons Planning Organization. Shouse had referred to this report during his testimony at the May 3 hearing. Shouse testified at the District Court hearing on the order to show cause, that he had submitted this letter and report to the City Commission to clarify and support his testimony that ground water pollution would occur if the City Commission granted the rezoning application. Specifically, he wanted to clarify certain testimony given in response to questions from Foster's attorney.

Foster claims that the agenda and attached letter and report, comprised a secret memo which the city manager had circulated to the City Commission members, that it was calculated to defeat his rezoning application, and that he was given no opportunity to meet or rebut this evidence. For this reason, he claims he was denied due process of law. The record, however, does not support his contention that he was caught flat-footed at the May 10 meeting of the City Commission. Rather, it supports a conclusion that Foster's attorney was offered a copy by the city manager before the meeting started, but that Foster's attorney specifically declined.

-8-

The city manager testified at the District Court hearing concerning the agenda he had prepared for the May 10 meeting of the City Commission. This agenda, of course, included his own recommendation with supporting reasons, that the City Commission deny the rezoning application. He unequivocally testified that sometime before the May 10 meeting began, he offered to supply a copy of the agenda to Foster's attorney but that Foster's attorney refused this offer. He was not specifically asked whether he also offered a copy of the Shouse letter and accompanying water report. The testimony of the city manager stands unrefuted.

The city manager, furthermore, testified that at the May 10 meeting, he briefly spoke to the City Commission and recommended that it deny the rezoning application. It is clear that Foster and the attorney knew or should have known that the City Commission would receive the recommendations of the city manager that the rezoning application be denied. The record does not indicate that Foster or his attorney were at liberty to participate at the May 10 meeting. Nonetheless, neither Foster nor his attorney did anything to object to the use of the memorandum or to the statements of the city manager.

There is also not the slightest evidence that Shouse's letter or the water study report were reported to by the City Commission during the May 10 meeting. At least three witnesses, including one commission member, testified at the District Court hearing that Shouse's letter and water report were not discussed by the City Commission during the meeting. There was no contrary testimony. At this public meeting the Commissioners discussed the Foster rezoning application for at least a period of fifteen minutes, and then by a divided vote, decided to deny the rezoning.

-9-

We note that Foster's attorney had a court reporter present to record the May 10 proceedings held in relation to the rezoning application. This fact was brought forth during the District Court hearing on the order to show cause, and in response to questions of Foster's attorney during the argument of this appeal. Under these circumstances, Foster was in no position to argue that the City Commission was obligated to but failed to provide him with a record of the proceedings. A record existed, but Foster's attorney chose not to have it transcribed. The City Commission cannot be held responsible for this.

We thus have a situation where neither Foster nor his attorney ever requested the City Commission to keep a verbatim record of its proceedings in relation to the rezoning application. There is neither existing statutory law nor Montana case law requiring this procedure, and it is difficult for us to determine that the City Commission nonetheless had a mandatory duty to keep such a record. The fact that Foster did have a record if he chose to use it, obviates any prejudice occurring because of an absence of a record. It is difficult for us to see how he could claim in District Court that review was inadequate because the city had not recorded the proceedings, but where he actually had his own record of the proceedings.

Nor is there any existing statutory or case law in this state which requires a City Commission when hearing a rezoning application, to enter findings in support of its decision. If there is such a duty, it is only the duty that the District Court had been asked to create by its decision, and that this Court has been asked to ratify. Foster did not ask the City Commission to enter findings of fact in support of whatever decision it made. Rather, the only time

-10-

findings became an issue is when Foster petitioned the City Commission for a rehearing and claimed as one of the grounds for a rehearing that the City Commission had precluded him from seeking judicial review because it had not made findings in support of its decision.

Thus, as to both a record of the proceedings, and requested findings, Foster and his attorney remained silent during the May 3 and May 10 meetings of the City Commission. It appears that he was gambling on a favorable decision, but in the event it was adverse, was carrying his due process argument as an ace in the hole to spring on the City Commission in favor of a rehearing on the merits. Thus, it was only when Foster appeared before the City Commission on May 17 and demanded a rehearing that the City Commission learned for the first time that Foster was contending it should have kept a record of its proceedings and should have entered findings in support of its decision.

Nor are we impressed by Foster's contention that the City Commission surreptitiously relied on beyond the record evidence in reaching its decision. At the May 3 hearing Joel Shouse testified in detail concerning his feelings about the water pollution problems inherent in allowing residential development of the property involved. He was extensively examined by Foster's attorney. It was in response to these questions that Shouse sent a letter and the accompanying Blue Ribbons Report with appropriate references to the area where Foster's land is located. Shouse testified that he sent this letter and Blue Ribbons Report to clarify his testimony at the May 3 hearing. This Blue Ribbons Report was not a secret document. It had already been released to the public and Foster or his attorney had access to it if they so desired. Furthermore, the City Manager testified at the District Court show cause hearing that he had offered the City Commission agenda to Foster's attorney, but that he had declined, stating that he would look at the

information later.  Under these circumstances, we can hardly conclude that Foster and his attorney were caught flat-footed at the May 10 City Commission meeting.  Furthermore, there is no indication that the City Commission relied on the Shouse letter or Blue Ribbons Report in reaching its decision.

As we previously stated, the underlying and controlling issue is whether it was appropriate for the District Court here to issue a writ of mandamus, in essence directing the City Commission to undertake certain procedures which it had not had a duty to perform, prior to that time.

Before the District Court decision, there was no requirement under law that the City Commission in support of a decision granting or denying a rezoning request, enter written findings of fact.  Before the District Court decision, there was no requirement under law that the City Commission was required to keep a verbatim record of the proceedings.  Before the District Court decision, there was no requirement under law that the City Commission conduct its proceedings in an adjudicative manner so as to give an applicant full procedural due process rights.  If there was no antecedent duty of the City Commission to perform these functions, we fail to see how the District Court, could, by a writ of mandamus, order the City Commission to do so.

Nor are the equities on the side of Foster in relation to the procedural problems created.  It was not until the City Commission turned down Foster's rezoning application that he first raised the issues of the failure of the City Commission to keep a verbatim record and the failure of the City Commission to enter written findings of fact in support of its decision. Furthermore, it appears from the record in

the District Court and the admissions made before this Court that Foster's attorney actually had a court reporter present for the purpose of recording the City Commission proceedings in relation to Foster's rezoning application. And, of course, it appears that Foster's attorney knew or should have known that the City Commission would, on May 10, hear from the city manager with respect to his recommendations and that his recommendations were based at least in part on the letter from Joel Shouse and the accompanying Blue Ribbons Report. It was only after Foster had banked on a favorable decision from the City Commission and was turned down on his rezoning application that he first raised all of the procedural due process questions. This, we believe, is not sufficient to invoke the powers of a District Court to issue a writ of mandamus against a City Commission for not following law that prior to the District Court order had no existence at all in this state.

Based on the record before us, we see no reason why we should be impelled to engage in a legal discussion as to whether the City Commission should be bound by adjudicatory hearing procedures when undertaking and considering an application for rezoning. We note, furthermore, that the legislature has not seen fit to impose adjudicatory hearing procedures in cases of this nature, although it has done so in cases which involve proceedings before a local board of adjustment. See sections 76-2-221 through 76-2-228, MCA; and see also, sections 76-2-321 through 76-2-328, MCA. Although we recognize potential procedural problems in questions involving rezoning applications, we will not, under the state of this record, determine whether adjudicatory-type hearing safeguards are required in a rezoning application.

-13-

It was clearly improper to use a writ of mandamus to impose, in effect, retroactive rules governing the proceedings of the City Commission. The judgment of the District Court is reversed.

_____
Justice

We Concur:

_____
Chief Justice


_____


_____
Justices

-14-