**[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 78.]**

THE STATE EX REL. QUARTO MINING COMPANY, APPELLANT, *v.* FOREMAN ET AL., APPELLEES.

[Cite as *State ex rel. Quarto Mining Co. v. Foreman*, 1997-Ohio-71.]

*Workers' compensation—In evaluating claimant's application for permanent total disability compensation, Industrial Commission does not abuse its discretion by failing to initiate the issue whether claimant's retirement precludes his or her eligibility for permanent total disability compensation—Industrial Commission's award of permanent total disability compensation supported by "some evidence," when.*

(No. 95-248—Submitted March 18, 1997—Decided June 18, 1997.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD12-1738.

———————————

{¶ 1} On July 12, 1972, claimant-appellee, Glen Foreman, was injured in a roof cave-in in an underground mine while working as a roof bolter for appellant, Quarto Mining Company ("employer"). Claimant filed a workers' compensation claim which was ultimately allowed by appellee Industrial Commission of Ohio for "[f]racture distal right tibia and fibula; laceration left occipital (scalp); talocalcaneal dislocation right ankle; lumbosacral strain; and osteomyelitis of the distal end of the tibia."

{¶ 2} Claimant was initially off work for approximately one year. He attempted to return to his former job as a roof bolter, but was unable to do so. He was then transferred to the job of "outside supply man," at which he remained for approximately three years. Thereafter, claimant was transferred to the job of dispatcher in the coal mine. During this time, claimant underwent multiple surgeries in an effort to treat and correct the injuries to his right leg and foot and the osteomyelitis that developed secondary to surgery.

**{¶ 3}** Claimant remained at the dispatcher job until September 1984, when he suffered a myocardial infarction and underwent a coronary artery bypass graft. Also, the mine closed and claimant was laid off. He has not worked since September 27, 1984, and has been receiving Social Security disability benefits since March 1, 1985.

**{¶ 4}** On December 16, 1985, claimant filed an application for permanent total disability ("PTD") compensation, which the commission denied by order dated February 24, 1987. On January 24, 1989, claimant filed another application for PTD benefits. In the statement of facts prepared for the commission, it was stated: "It is the opinion of this statement writer that the weight of the evidence on file does not support a finding of permanent total disability. Claimant retired in 1984 as a result of his cardiac condition. In September of 1984, the claimant underwent a coronary bypass surgery." However, on January 10, 1991, the commission denied PTD compensation "for the reason that the disability is not total; that is, the claimant is able to perform sustained remunerative employment."

**{¶ 5}** Claimant again filed an application for PTD compensation on August 18, 1992. By order dated June 15, 1993, the commission granted the application, explaining as follows:

"The reports of Drs. Smith and Gatens were reviewed and evaluated. This order is based particularly upon the reports of Drs. Smith and Gatens, evidence in the file and/or evidence adduced at the hearing.

"After reviewing the medical evidence relevant to the claimant's 1972 industrial injury, it is concluded that his allowed conditions severely restrict his ability to pursue gainful employment. The medical evidence relied upon in making this determination includes the reports of Drs. Smith and Gatens. Dr. Smith, claimant's attending physician, opined Mr. Foreman is permanently and totally disabled as a result of his allowed conditions. Dr. Gatens, Commission Physical Medicine Specialist, rated Mr. Foreman's impairment at a relatively high 55% and

opined that he is unable to return to his former position of employment. However, Dr. Gatens did indicate Mr. Foreman retains the ability to pursue sedentary employment. It is further noted that Mr. Foreman has undergone a number of surgical procedures in an attempt to correct his right lower extremity injuries and relatively recent diagnostic testing evidence suggests the continued presence of ankle impairment. Accordingly, based on the foregoing medical evidence, the Commission concludes Mr. Foreman does not possess the ability to engage in his former work activities and, at best, only is capable of engaging in sedentary work activities which do not require standing or ambulating of any significant degree.

"Considering his non-medical disability factors, the Commission concludes that he does not possess the vocational potential to obtain sedentary work of a sit-down nature. Mr. Foreman is 57 years of age, possesses an eleventh grade education with a G.E.D., and has work history as a roof bolter, supply man, dispatcher, coal miner, corrections officer and experience in the U.S. Army. Due to the fact Mr. Foreman's prior work experience all entailed significant physical exertion and did not qualify him for similar or related employment of a reduced physical capacity nature, it is concluded that he currently lacks job skills transferable to sit-down sedentary work.

"Furthermore, Mr. Foreman's advancing age and G.E.D. educational level do not serve as vocational assets in his attempt to acquire new and specialized vocational skills. Specifically, it is determined that Mr. Foreman's age and education indicate that he lacks the useful remaining industrial life, educational ability, and above average intellectual capacity in order for him to acquire the skills necessary for him to obtain a new vocation of a sit-down sedentary nature. Accordingly, for the foregoing reasons, Mr. Foreman's application for permanent and total disability is granted."

{¶ 6} On December 28, 1993, the employer filed a complaint in mandamus with the court of appeals. The complaint alleged (1) that the commission's June

15, 1993 order fails to "cite reliance on some evidence of record which would support a finding of permanent total disability" and (2) that the commission's order fails to "address the obvious facts of record that * * * [claimant] remained in the workforce until a 1984 non-occupational heart attack and subsequent surgery forced him to quit working."

{¶ 7} The cause was assigned to a referee, who recommended that the writ be granted to the extent of ordering the commission to make a factual determination as to the voluntariness of claimant's departure from the workforce. The referee essentially reasoned that since references were made in the record to claimant's heart attack, layoff and/or retirement, it was incumbent upon the commission to determine the nature and extent of claimant's removal from the workforce.

{¶ 8} The appellate court rejected the referee's conclusions and recommendation and denied the writ. The court essentially held that the failure of the employer to have raised the retirement issue administratively precludes it from arguing the issue in an action in mandamus. Additionally, the court of appeals found that the record contains some evidence to support the commission's award of PTD compensation.

{¶ 9} This cause is before the court upon an appeal as of right.

_____

*Hanlon, Duff, Paleudis & Estadt Co., L.P.A.,* and *John G. Paleudis*, for appellant.

*Larrimer & Larrimer* and *David H. Swanson*, for appellee Glen Foreman.

*Betty D. Montgomery*, Attorney General, and *Melanie Cornelius*, Assistant Attorney General, for appellee Industrial Commission of Ohio.

_____

***Per Curiam.***

{¶ 10} This appeal raises two issues. The first question presented is whether the commission, in evaluating claimant's application for PTD compensation,

abused its discretion by failing to initiate the issue of whether claimant's retirement precludes his eligibility for PTD compensation. This question can also be framed in terms of whether the employer waived the retirement issue by not raising it administratively. The second issue is whether the cause should be remanded for further consideration on the basis that the medical reports upon which the commission relied do not constitute "some evidence" of PTD, or the commission failed to adequately explain and/or apply claimant's nonmedical disability factors.

I

{¶ 11} It is important to understand initially that the question in this case is not, as the employer claims, about whether an issue must be raised by some "formal procedure" or placed on some "formal record" before the commission. The employer nowhere denies that it failed to raise the retirement issue administratively. Nor does the employer claim to have raised the issue administratively at all, by any means, "formal" or otherwise, during either the proceedings culminating in the order of June 15, 1993, or in any of the proceedings leading to the two prior commission orders denying PTD compensation. Instead, the essence of the employer's first three arguments, properly construed, is that the issue raises itself by virtue of being manifest in the record.

{¶ 12} "Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed." *Goldberg v. Indus. Comm.* (1936), 131 Ohio St. 399, 404, 6 O.O. 108, 110, 3 N.E.2d 364, 367. See, also, *State ex rel. Moore v. Indus. Comm.* (1943), 141 Ohio St. 241, 25 O.O. 362, 47 N.E.2d 767, paragraph three of the syllabus; *State ex rel. Gibson v. Indus. Comm.* (1988), 39 Ohio St.3d 319, 320, 530 N.E.2d 916, 917 (rule that issues not previously raised are waived is applicable in an appeal from a denial of a writ of mandamus). Nor do appellate courts have to consider an error which the complaining party "could have called, but did not call, to the trial court's attention at a time when such

error could have been avoided or corrected by the trial court." *State v. Williams* (1977), 51 Ohio St.2d 112, 117, 5 O.O.3d 98, 101, 364 N.E.2d 1364, 1367.

{¶ 13} These rules are deeply embedded in a just regard for the fair administration of justice. They are designed to afford the opposing party a meaningful opportunity to respond to issues or errors that may affect or vitiate his or her cause. Thus, they do not permit a party to sit idly by until he or she loses on one ground only to avail himself or herself of another on appeal. In addition, they protect the role of the courts and the dignity of the proceedings before them by imposing upon counsel the duty to exercise diligence in his or her own cause and to aid the court rather than silently mislead it into the commission of error. *Id.*, 51 Ohio St.2d at 117, 5 O.O.3d at 101, 364 N.E.2d at 1367. See, also, *State v. Driscoll* (1922), 106 Ohio St. 33, 38-39, 138 N.E. 376, 378.

{¶ 14} The employer, however, essentially seeks a dispensation or relaxation of these rules in proceedings before the commission. However, there is nothing about the purpose of workers' compensation legislation or the character of the proceedings before the commission that would justify such action. As Professor Larson explains, "evidentiary and procedural rules usually have an irreducible hard core of necessary function that cannot be dispensed with in any orderly investigation of the merits of a case." 2B Larson, Workmen's Compensation Law (1996) 15-4, Section 77A.10. Thus, "when the rule whose relaxation is in question is more than a merely formal requirement and touches substantial rights of fair play, the relaxation is no more justified on a compensation appeal than on any other. *Such a rule is that forbidding the raising on appeal of an issue that has not been raised below * * *.*" (Emphasis added.) *Id.* at 15-101, 15-103, Section 77A.83. (The term "below" is used broadly by Professor Larson to include issues not raised at the administrative level. *Id.* at 15-103 to 15-116, fn. 46, Section 77A.83.)

{¶ 15} In a well-reasoned decision, the California appellate court in *Bohn v. Watson* (1954), 130 Cal.App.2d 24, 37, 278 P.2d 454, 462, applied these rules to

proceedings before the Real Estate Commissioner of Los Angeles County. The court refused to consider an issue not raised administratively, despite the fact that the lower court, upon an action for a writ of mandate, considered the issue. The court held that the issue was not properly injected into the claim by virtue of the lower court's consideration. In so holding, the court aptly explained:

"It was never contemplated that a party to an administrative hearing should withhold any defense then available to him or make only a perfunctory or 'skeleton' showing in the hearing and thereafter obtain an unlimited trial *de novo*, on expanded issues, in the reviewing court. * * * The rule compelling a party to present all legitimate issues before the administrative tribunal is required in order to preserve the integrity of the proceedings before that body and to endow them with a dignity beyond that of a mere shadow-play. Had [appellant] desired to avail herself of the asserted bar of limitations, she should have done so in the administrative forum, where the commissioner could have prepared his case, alert to the need of resisting this defense, and the hearing officer might have made appropriate findings thereon." (Citations omitted.) See, also, *Foster v. Bozeman City Comm.* (1980), 189 Mont. 64, 68, 614 P.2d 1072, 1074 ("The facts do not permit us to extricate [relator] from the situation he helped to create."); *Shakin v. Bd. of Med. Examiners* (1967), 254 Cal.App.2d 102, 111, 62 Cal.Rptr. 274, 282; *Harris v. Alcoholic Beverage Control Appeals Bd.* (1961), 197 Cal.App.2d 182, 187, 17 Cal.Rptr. 167, 170-171.

{¶ 16} To do as the employer suggests would not only deny the claimant a meaningful opportunity to respond, but would also conflict with the court's directive that "[the commission] is not to be regarded as an adversary of the claimant as in other litigation." *Miles v. Elec. Auto-Lite Co.* (1938), 133 Ohio St. 613, 616, 11 O.O. 339, 341, 15 N.E.2d 532, 534. It would also open the door to forcing an already overworked commission to comb the files of every PTD case in search of issues that could potentially be raised by both sides at the hearing table.

In addition, it would waste judicial and administrative resources by permitting a party to secure another bite at the PTD apple based upon the commission's failure to consider an issue or correct an error upon which the party remained silent.

{¶ 17} These concerns apply with particular force in the case *sub judice*. The circumstances which the employer claims preclude PTD compensation occurred some two years prior to the commission's first order and eight and one-half years prior to its June 15, 1993 order. The record has contained references to claimant's retirement since as early as April 25, 1986. Had the employer raised the issue during the 1987 proceedings, it may well have avoided the processing of two more PTD applications and two additional hearings before a total of seven commissioners over a six-year span. A claimant cannot relitigate a prior finding that he had voluntarily retired. *State ex rel. Crisp v. Indus. Comm.* (1992), 64 Ohio St.3d 507, 597 N.E.2d 119. Instead, the employer sat idly by at each successive hearing, allowing the commission each time to determine the extent of claimant's disability on other grounds. Then, when it finally lost administratively in 1993, the employer raised the issue for the first time in a complaint in mandamus to the court of appeals.

{¶ 18} Utilizing another approach, the employer seems to be trying to argue that the commission's responsibility to initiate the issue of claimant's retirement arises by virtue of claimant's duty to prove that his disability is causally related to his employment. In so arguing, the employer merges those cases which provide that pre-PTD retirement precludes eligibility for PTD compensation, with cases holding that a finding of PTD cannot be based, in whole or in part, on nonallowed conditions. The suggestion here is that, since it is claimant's burden to prove that his disability is causally related to allowed conditions in the claim, it is necessarily claimant's burden to prove that nonallowed conditions played no part in his decision to retire.

**{¶ 19}** The argument is misguided. The claimant's burden is to persuade the commission that there is a proximate causal relationship between his work-connected injuries and disability, and to produce medical evidence to this effect. *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 575 N.E.2d 828; *State ex rel. Basham v. Consolidation Coal Co.* (1989), 43 Ohio St.3d 151, 541 N.E.2d 47; *Fox v. Indus. Comm.* (1955), 162 Ohio St. 569, 55 O.O. 472, 125 N.E.2d 1; *Aiken v. Indus. Comm.* (1944), 143 Ohio St. 113, 28 O.O. 50, 53 N.E.2d 1018. The claimant's burden in this regard does not extend so far as to require him to raise, and then eliminate, other possible causes of his disability. This is not a case in which the cause remains unexplained, as in slip-and-fall cases. Here, the claimant has produced direct medical evidence linking his disability with the injuries allowed in the claim. This evidence is sufficient to establish a prima facie causal connection. The burden should then properly fall upon the employer to raise and produce evidence on its claim that other circumstances independent of the claimant's allowed conditions caused him to abandon the job market.

**{¶ 20}** None of the parties cites *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.* (1985), 29 Ohio App.3d 145, 29 OBR 162, 504 N.E.2d 451. *Jones* was the first of "a trilogy of cases" which developed "[t]he rule that voluntary retirement will, but injury-induced retirement will not, preclude a claimant's eligibility for TTD [temporary total disability] compensation." *State ex rel. Baker Material Handling Corp. v. Indus. Comm.* (1994), 69 Ohio St.3d 202, 210, 631 N.E.2d 138, 145. In particular, the court of appeals in *Jones* ruled that voluntary retirement may be a basis for terminating TTD compensation. However, the appellate court refused to apply the rule because the employer failed to raise the issue before the commission. The court found itself "unable to find that respondent Industrial Commission abused its discretion by failing to consider and determine an issue that was not presented to it. * * * [W]e cannot find an abuse of discretion for failure of the respondent Industrial Commission to initiate such an issue under

the circumstances of this case." *Jones*, 29 Ohio App.3d at 148, 29 OBR at 164-165, 504 N.E.2d at 454.

{¶ 21} Accordingly, we hold that the commission, in evaluating a claimant's application for PTD compensation, does not abuse its discretion by failing to initiate the issue whether claimant's retirement precludes his or her eligibility for PTD compensation. Thus, the judgment of the court of appeals is affirmed as to this issue.

II

A. *Medical Challenges*

{¶ 22} Most of the employer's arguments concerning its challenges to the medical opinions are directed at Dr. Smith's report. It is not necessary to consider these arguments because, as the employer observes, "it appears the Commission did not even accept Dr. Smith's conclusion [that claimant was medically permanently and totally disabled], but rather preferred Dr. Gatens' conclusion [that claimant suffers a fifty-five percent permanent partial impairment and is medically capable of performing sedentary work]." Thus, even if Dr. Smith's report were removed from evidentiary consideration, there still remains the report of Dr. Gatens.

{¶ 23} The employer, without any supporting authority, raises the following challenges to Dr. Gatens's report:

1. The employer challenges Dr. Gatens's understanding of claimant's job duties between 1972 and 1984. However, "[a] lack of awareness of previous duties is generally of little consequence in a permanent total determination, since the relevant issue is not the ability to return to the former job, but is instead claimant's capacity for any sustained remunerative work." *State ex rel. Lopez v. Indus. Comm.* (1994), 69 Ohio St.3d 445, 449, 633 N.E.2d 528, 531. See, also, *State ex rel. Domjancic v. Indus. Comm.* (1994), 69 Ohio St.3d 693, 695, 635 N.E.2d 372, 375.

2. The employer assails Dr. Gatens's report for failing to "mention the 1984 heart attack" and failing to "evaluate the 1984 heart attack's impact on claimant's ability to remain in the work force." However, as the employer noted in reference to the first issue, an award of PTD compensation cannot be based in whole or part on nonallowed medical conditions. Dr. Gatens did the correct thing when he stated that although claimant "does have a history of cardiac problems, * * * they will not be considered in terms of the impairment related to the allowed industrial injuries."

3. The employer asserts that Dr. Gatens did "not seek to evaluate the claimant's condition in 1984." However, the claimant's condition in 1984 has little to do with the relevant inquiry in this case, *viz.*, the claimant's condition on March 12, 1993, the date on which he was examined by Dr. Gatens.

B. *Nonmedical Challenges*

{¶ 24} Here, again, the employer fails to support its arguments as to the nonmedical disability issues with any authority, and the arguments that it raises are easily disposed of:

1. The employer argues that the commission's order fails to explain "how the claimant with a 60% permanent partial impairment award was able to do the supplyman or dispatcher job until his 1984 heart attack." The employer is apparently referring to the fact that the claimant received a sixty percent permanent partial disability award which was paid "to 1/6/80." The thrust of the argument is that if the claimant could perform the jobs of supplyman or dispatcher prior to 1984 while his physical disability was found to be sixty percent, it must be explained why he cannot perform those same jobs thirteen years later when his impairment was rated by Dr. Gatens at fifty-five percent.

The argument attaches too much significance to the percentage of impairment assigned by Dr. Gatens. Indeed, it would have constituted error for the commission to draw its conclusion on the basis of such percentages alone, without regard to the claimant's actual physical restrictions and nonmedical disability

factors as they existed in 1993. *State ex rel. Koonce v. Indus. Comm.* (1994), 69 Ohio St.3d 436, 437-438, 633 N.E.2d 520, 522.

2. The employer challenges the commission's conclusion that claimant's advancing age does not serve as a vocational asset. According to the employer, "[t]hat he [claimant] is now 57 [years of age] is irrelevant." This argument is questionable at best. Age is a *Stephenson* factor. *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946. Thus, it is not only a relevant, but a necessary, consideration in determining PTD. See *Basham,* 43 Ohio St.3d at 152, 541 N.E.2d at 48. It is entirely within the commission's prerogative as exclusive evaluator of disability to conclude that, at age fifty-seven, claimant was old, not young, and that his age was a hindrance, not a help, to his retraining. Thus, the very fact of claimant's advancing age may serve to support the granting of an application for PTD compensation after an initial denial. Moreover, a showing of new and changed circumstances is not "a prerequisite to commission consideration of a subsequent application for permanent total disability compensation after an initial denial." *State ex rel. Youghiogheny & Ohio Coal Co. v. Indus. Comm.* (1992), 65 Ohio St.3d 351, 352-353, 603 N.E.2d 1026, 1027. In *Youghiogheny*, the claimant filed his second application (which was ultimately granted) four weeks after the commission denied his first application.

3. The employer's remaining arguments deal with the commission's interpretation of other nonmedical disability factors. In particular, the employer interprets a vocational evaluation screening summary by the bureau's rehabilitation division, not referred to in the commission's order, as vocationally favorable. The employer notes that such report listed claimant's work history and education as "assets."

{¶ 25} "As to the commission's failure to refer to the evaluation of the vocational rehabilitation consultant, that evaluation may be accepted or rejected as the commission deems appropriate because the determination of extent of disability

12

is the function of the commission." *State ex rel. Adkins v. Indus. Comm.* (1986), 24 Ohio St.3d 180, 182, 24 OBR 410, 412, 494 N.E.2d 1105, 1107. As to the report itself, it is not so one-sided as the employer claims. It lists claimant's age, at that time fifty-four, as a vocational limitation. It also rates claimant as "below average" in every vocational aptitude for which he was tested but one (he was "proficient" at adding and subtracting whole numbers).

**{¶ 26}** Having found the employer's medical and nonmedical challenges to be without merit, we find further that the commission's order is supported by "some evidence." Thus, the judgment of the court of appeals is affirmed as to this issue.

**{¶ 27}** In light of all the foregoing, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————