DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Berman Industries, Inc., commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its award to respondent Bruce Shields for relator's violation of a specific safety requirement ("VSSR").
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate concluded that "(1) because relator failed to administratively challenge the applicability of the safety rule to the industry at which it was engaged this court cannot review relator's argument or claim in that regard; (2) the record supports the commission's determination that claimant was injured on a `compression and transfer' molding machine; and (3) relator's claim that the 40 percent penalty is being unlawfully calculated against claimant's working wage loss award is not ripe for review in this action." (Magistrate's Decision, ¶ 18.) As a result, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator has filed objections to the magistrate's conclusions of law. While not setting forth a specific objection, relator's filing takes issue with the magistrate's determination that relator is engaged in an industry subject of the administrative rules at issue. The magistrate, however, addressed relator's contention at length, properly concluding relator's failure to raise the issue before the Industrial Commission bars this court from considering the issue in the first instance in mandamus proceedings. For the reasons set forth in the magistrate's decision, the objections are overruled.
 {¶ 4} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ denied.
Petree and Klatt, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Berman Industries, Inc., :
 Relator, :
 v. : No. 04AP-1254
The Industrial Commission of Ohio : (REGULAR CALENDAR)
and Bruce Shields, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on June 28, 2005 Dinsmore Shohl, and George B. Wilkinson, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
Gary A. McGee, for respondent Bruce Shields.
 IN MANDAMUS {¶ 5} In this original action, relator, Berman Industries, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its award to respondent Bruce Shields ("claimant") for relator's violation of a specific safety requirement ("VSSR").
Findings of Fact:
 {¶ 6} 1. On October 24, 2000, claimant sustained severe crushing type injuries to his right hand and forearm while employed as a machine operator for relator. The industrial claim is assigned claim number 00-556163.
 {¶ 7} 2. On June 3, 2002, claimant filed a VSSR application alleging multiple violations of specific safety requirements. Among the list of safety rules allegedly violated was the guarding requirement relating to molding machines set forth at Ohio Adm. Code 4123:1-13-04(E)(4)(a)(i) and (ii) (formerly Ohio Adm. Code 4121:1-13-04[E][4][a][i] and [ii]) at issue in this action.
 {¶ 8} 3. In August 2002, relator, through counsel, filed its answer to the VSSR application, stating:
The employer hereby denies that it violated any applicable safety codes or regulations in connection with claimant's October 24, 2000 injury.
Specifically, the two alleged safety code violations cited in claimant's application do not apply to the industry or machinery that allegedly involved claimant's underlying industrial injury.
 {¶ 9} 4. It is not clear from the answer why it refers to "the two alleged safety code violations cited" when the VSSR application alleged many more code violations. Also, the answer did not actually specify the two code violations cited that relator was answering.
 {¶ 10} 5. The VSSR application prompted a commission investigation into the accident. The commission's investigative report is dated December 6, 2002.
 {¶ 11} 6. On July 22, 2003, the VSSR application was heard by a staff hearing officer ("SHO"). The hearing was recorded and transcribed for the record. At the hearing, Mr. Dolph Berman, the owner and president of Berman Industries, Inc., testified.
 {¶ 12} 7. Following the hearing, the SHO issued an order finding that relator had violated the guarding requirement relating to molding machines set forth at Ohio Adm. Code 4123:1-13-04(E)(4)(a)(i) and (ii) (formerly Ohio Adm. Code 4121:1-13-04[E][4][a][i] and [ii]) and that the violation was the proximate cause of claimant's industrial injuries. The SHO assessed a penalty against relator "in the amount of 40 percent of the maximum weekly rate under the rule of `State ex rel Engle v. Industrial Commission', 142 Ohio St. 425." The SHO's order states in part:
Mr. Bruce Shields was employed as a machine operator at Berman Industries. On 10/24/2000 Mr. Shields was operating a hydraulic vacuum compression molding machine making plastic easter eggs when a part got stuck to the top platen of the machine. The injured worker went to the control panel turned off one button and four switches which would turn off the platens and run out both of the heaters. After doing this the injured worker put his hand into the machine to remove the part and while doing so the platens came together injuring his hand and arm.
* * *
The Hearing Officer finds that the machine in question was a hydraulic vacuum compression molding machine. The mach-ine produces plastic parts by sucking plastic over molds which are attached to a [sic] platens and the platens then come together to cut the product.
* * *
The Hearing Officer finds that the machine in question is a compression molding machine based on the testimony of Mr. Berman at hearing. Therefore, the above noted section applies. The evidence is undisputed that at the time that the molding machine was installed and at the time of the injured worker's injury, there was no gate on the machine which when closed completely encloses the molding area and prevents the press from operating unless the gate is closed.
The Hearing Officer further finds no evidence that the machine was equipped with two hand controls which must remain depressed during press closing.
Therefore, based on this evidence, it is found that the employer was in violation of this subsection as of the date of the injured worker's injury.
It is further found that the employer's violation of OAC 4121-13-04(E)(4)(a)(i) and (ii) was the proximate cause of the injured worker's injury. If the machine was properly guarded so that the injured worker could not insert his hands or fingers into the danger zone of the point of operation or the machine had two handed controls the injured worker's injuries most likely would not have occurred. Therefore, the Hearing Officer finds that the injury was the proximate result of the employer's failure to have any guard in place as of the date of the injured worker's injury.
 {¶ 13} 8. Relator moved for rehearing pursuant to Ohio Adm. Code4121-3-20(C).
 {¶ 14} 9. In its memorandum in support of rehearing, relator's counsel wrote:
The Commission's order constitutes an abuse of discretion for the following reasons:
1. The machine on which the claimant was working does not constitute a hydraulic vacuum compression molding machine as contemplated by O.A.C. Sections 4121:1-13-04(E)(4)(a)(i) and (ii), and the guarding requirements of these code sections do not apply to the machine which claimant was operating on October 24, 2000.
* * *
1. The machine in question does not constitute a hydraulic vacuumcompression molding machine and cannot be subject to the guardingrequirements for such machines.
Initially, it should be emphasized that the machine on which the claimant was working on October 24, 2000 is a highly specialized and virtually unique machine tool. It is primarily a vacuum based molding machine that takes continuous chain-fed rolled plastic, heats it up, then uses the vacuum process to conform the heated plastic to the shape of a mold, generally forming it into plastic bowls, toy easter eggs, or plastic plates and trays.
The molds are attached to two platens that slowly come together, creating a vacuum seal which is the "force" that conforms the plastic into the shape of the mold being used.
* * *
The machine is not a * * * compression molding machine, a transfer molding machine, or a compression and transfer molding machine * * * that * * * fits into any of the applicable safety code sections contained with the Ohio Administrative Code.
(Emphasis sic.)
 {¶ 15} 10. On March 13, 2004, another SHO mailed an order denying rehearing.
 {¶ 16} 11. On November 23, 2004, relator, Berman Industries, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 17} Relator presents three arguments in support of a writ of mandamus: (1) the safety rule it was found to have violated is not applicable to the industry in which relator was engaged at the time of injury; (2) the machine in question is not a "compression and transfer" molding machine within the meaning of the safety rule it was found to have violated; and (3) the 40 percent penalty is being unlawfully calculated against claimant's working wage loss award.
 {¶ 18} The magistrate finds: (1) because relator failed to administratively challenge the applicability of the safety rule to the industry at which it was engaged this court cannot review relator's argument or claim in that regard; (2) the record supports the commission's determination that claimant was injured on a "compression and transfer" molding machine; and (3) relator's claim that the 40 percent penalty is being unlawfully calculated against claimant's working wage loss award is not ripe for review in this action.
 {¶ 19} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 20} Chapter 4123:1-13 is captioned "Rubber and Plastic Industries." Ohio Adm. Code 4123:1-13-01(A) sets forth the scope of the specific requirements under Chapter 4123:1-13 stating:
These specific requirements supplement those of Chapter 4121:1-5 of the Administrative Code, "Specific Safety Re-quirements of the Industrial Commission of Ohio Relating to All Workshops and Factories," and are minimum requirements of an employer for the protection of such employer's employees and no others and apply to the rubber and plastic industries where crude, synthetic, or reclaimed rubber or plastics are processed.
 {¶ 21} Relator argues here that it was not involved in the rubber or plastic industries "where crude, synthetic, or reclaimed rubber or plastics are processed." Relator claims that it is, however, subject to the specific safety requirements set forth at Chapter 4121:1-5 relating to all workshops and factories. Thus, relator argues that the commission cannot lawfully find that it has violated Ohio Adm. Code4123:1-13-04(E)(4)(a)(i) and (ii) because that safety rule is inapplicable to the industry in which relator was engaged at the time of injury.
 {¶ 22} The transcript of the July 22, 2003 hearing before the SHO reveals that relator's counsel failed to argue relator's claim presented here that relator was not engaged in the industry to which the safety rule at issue is applicable. Moreover, relator's motion for rehearing fails to make this claim or defense to the VSSR application. However, relator argues here that it preserved its right to present its claim in this mandamus action by its answer to the VSSR application.
 {¶ 23} The magistrate finds that relator's failure to pursue this issue or claim administratively bars this court from addressing it de novo in this action. State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78, is instructive. In Quarto, the employer brought a mandamus action to challenge the commission's award of permanent total disability compensation. The commission did not address a retirement issue that was suggested on the record but was never pursued administratively by the employer. In mandamus, the employer argued that "the issue raises itself by virtue of being manifest in the record."Quarto, at 81. The Quarto court rejected the employer's position and refused to address the retirement issue, explaining:
"Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed." Goldberg v.Indus. Comm. (1936), 131 Ohio St. 399, 404, 6 O.O. 108, 110, 3 N.E.2d 364,367. See, also, State ex rel. Moore v. Indus. Comm. (1943),141 Ohio St. 241, 25 O.O. 362, 47 N.E.2d 767, paragraph three of the syllabus; State ex rel. Gibson v. Indus. Comm. (1988), 39 Ohio St.3d 319,320, 530 N.E.2d 916, 917 (rule that issues not previously raised are waived is applicable in an appeal from a denial of a writ of mandamus). Nor do appellate courts have to consider an error which the complaining party "could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Williams (1977), 51 Ohio St.2d 112, 117, 5 O.O.3d 98, 101, 364 N.E.2d 1364, 1367.
These rules are deeply embedded in a just regard for the fair administration of justice. They are designed to afford the opposing party a meaningful opportunity to respond to issues or errors that may affect or vitiate his or her cause. Thus, they do not permit a party to sit idly by until he or she loses on one ground only to avail himself or herself of another on appeal. In addition, they protect the role of the courts and the dignity of the proceedings before them by imposing upon counsel the duty to exercise diligence in his or her own cause and to aid the court rather than silently mislead it into the commission of error. Id.,51 Ohio St.2d at 117, 5 O.O.3d at 101, 364 N.E.2d at 1367. See, also,State v. Driscoll (1922), 106 Ohio St. 33, 38-39, 138 N.E. 376, 378.
The employer, however, essentially seeks a dispensation or relaxation of these rules in proceedings before the commission. However, there is nothing about the purpose of workers' compensation legislation or the character of the proceedings before the commission that would justify such action. As Professor Larson explains, "evidentiary and procedural rules usually have an irreducible hard core of necessary function that cannot be dispensed with in any orderly investigation of the merits of a case." 2B Larson, Workmen's Compensation Law (1996) 15-4, Section 77A.10. Thus, "when the rule whose relaxation is in question is more than a merely formal requirement and touches substantial rights of fair play, the relaxation is no more justified on a compensation appeal than on any other. Such a rule is that forbidding the raising on appeal of an issuethat has not been raised below * * *." (Emphasis added.) Id. at 15-101, 15-103, Section 77A.83. (The term "below" is used broadly by Professor Larson to include issues not raised at the administrative level. Id. at 15-103 to 15-116, fn. 46, Section 77A.83.)
In a well-reasoned decision, the California appellate court in Bohn v.Watson (1954), 130 Cal.App.2d 24, 37, 278 P.2d 454, 462, applied these rules to proceedings before the Real Estate Commissioner of Los Angeles County. The court refused to consider an issue not raised administratively, despite the fact that the lower court, upon an action for a writ of mandate, considered the issue. The court held that the issue was not properly injected into the claim by virtue of the lower court's consideration. In so holding, the court aptly explained:
"It was never contemplated that a party to an administrative hearing should withhold any defense then available to him or make only a perfunctory or `skeleton' showing in the hearing and thereafter obtain an unlimited trial de novo, on expanded issues, in the reviewing court. * * * The rule compelling a party to present all legitimate issues before the administrative tribunal is required in order to preserve the integrity of the proceedings before that body and to endow them with a dignity beyond that of a mere shadow-play. Had [appellant] desired to avail herself of the asserted bar of limitations, she should have done so in the administrative forum, where the commissioner could have prepared his case, alert to the need of resisting this defense, and the hearing officer might have made appropriate findings thereon." (Citations omitted.) See, also, Foster v. Bozeman City Comm. (1980), 189 Mont. 64, 68,614 P.2d 1072, 1074 ("The facts do not permit us to extricate [relator] from the situation he helped to create."); Shakin v. Bd. of Med.Examiners (1967), 254 Cal.App.2d 102, 111, 62 Cal.Rptr. 274, 282;Harris v. Alcoholic Beverage Control Appeals Bd. (1961),197 Cal.App.2d 182, 187, 17 Cal.Rptr. 167, 170-171.
To do as the employer suggests would not only deny the claimant a meaningful opportunity to respond, but would also conflict with the court's directive that "[the commission] is not to be regarded as an adversary of the claimant as in other litigation." Miles v. Elec.Auto-Lite Co. (1938), 133 Ohio St. 613, 616, 11 O.O. 339, 341,15 N.E.2d 532, 534. It would also open the door to forcing an already overworked commission to comb the files of every PTD case in search of issues that could potentially be raised by both sides at the hearing table. In addition, it would waste judicial and administrative resources by permitting a party to secure another bite at the PTD apple based upon the commission's failure to consider an issue or correct an error upon which the party remained silent.
Id. at 81-83.
 {¶ 24} Clearly, under the rule set forth in Quarto, relator has waived any right to pursue this issue here because relator failed to pursue the issue administratively.
 {¶ 25} The magistrate also specifically rejects relator's argument that its answer to the VSSR application preserved its right to pursue the issue here. As the Quarto court states, in quoting the California appellate court in Bohn v. Watson (1954), 130 Cal.App.2d 24, the rule also precludes a litigant from making only a perfunctory or skeleton showing in the administrative proceedings and thereafter obtaining a de novo review on expanded issues in the reviewing court.
 {¶ 26} At best, relator's answer could be described as raising the issue in a perfunctory manner. The answer itself is vague as to the issue. Again, the transcript of the hearing discloses that the issue was not pursued by relator's counsel. Also, the issue was not pursued by relator's counsel on the motion for rehearing. Clearly, relator simply failed to raise or pursue the issue administratively.
 {¶ 27} Notwithstanding its failure to pursue the issue administratively, relator argues that the failure of respondents to plead an affirmative defense, such as waiver, in their answers to the complaint filed in this action means that respondents have waived their right to assert relator's failure to pursue the issue administratively. The magistrate disagrees.
 {¶ 28} It is settled law that in order for a writ of mandamus to issue, relator must demonstrate: (1) that he has a clear legal right to the relief prayed for; (2) respondents are under a clear legal duty to perform the acts requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v.McMonagle (1983), 6 Ohio St.3d 28, 29.
 {¶ 29} It is the relator in a mandamus action who has the burden of showing that he lacks a plain and adequate remedy in the ordinary course of the law. It is the relator in a mandamus action who has the burden of showing that he has exhausted his administrative remedies. State ex rel.Buckley v. Indus. Comm., 100 Ohio St.3d 168, 2003-Ohio-5072.
 {¶ 30} In its complaint, relator failed to allege that it lacked a plain and adequate remedy at law or that it had exhausted its administrative remedies. If relator had so pled, respondents would have presumably denied the allegations. Relator's own failure to properly plead this action does not translate into a waiver by respondents of an element of mandamus to be proven by relator. See Buckley.
 {¶ 31} In short, the pleadings notwithstanding, relator's failure to administratively pursue the issue raised here precludes this court from considering the issue de novo in this action.
 {¶ 32} The magistrate also disagrees with relator's contention that the claim it failed to pursue administratively but attempts to raise here is a challenge to the commission's subject matter jurisdiction over VSSR claims. See Civ.R. 12(H)(3). Clearly, the commission has subject matter jurisdiction over VSSR claims. See State ex rel. Eaton Corp. v.Lancaster (1988), 40 Ohio St.3d 404, 410 (the commission has subject matter jurisdiction over total disability determinations under R.C. 4123.56
and 4123.58).
 {¶ 33} Section 35, Article II, Ohio Constitution, provides the commission subject matter jurisdiction over VSSR claims. State ex rel.Haines v. Indus. Comm. (1972), 29 Ohio St.2d 15. Contrary to relator's suggestion, the commission's subject matter jurisdiction over the VSSR claim is not dependent upon the commission finding a specific safety code violation that can withstand any challenge as to its factual applicability to the industrial injury.
 {¶ 34} The second argument presented by relator challenges the commission's finding under Ohio Adm. Code 4123:1-13-04(E)(4)(a) that the machine that injured claimant was a "compression and transfer molding machine."
 {¶ 35} According to relator:
Given that only five or six of these machines were ever made, it is doubtful that this particular code section was intended to apply to this particular machine. Moreover, there is nothing in the description of this thermoformer machine which suggests that it is a compression and transfer molding device. While those terms are not defined in the regulations, compression would seem to indicate that there was some pressure placed on the plastic to cause it to change shape. That is, of course, not the case here. This is a situation where the plastic is heated, then a vacuum shapes it and then it is cut. There is no compression whatsoever involved in the thermoformer: merely a heated piece of plastic being pulled into a mold by vacuum and then cut.
(Relator's brief at 8.)
 {¶ 36} As previously noted, Mr. Berman testified at the VSSR hearing on July 22, 2003. Mr. Berman was extensively questioned about the machine by employer's counsel and claimant's counsel.
 {¶ 37} During his direct examination by relator's counsel, Mr. Berman agreed that the machine was a "molding machine." (Tr. at 72.) He also agreed that "the platens compress on this machine." (Tr. at 76.)
 {¶ 38} During re-cross-examination by claimant's counsel, Mr. Berman denied that it is a "compression and transfer molding machine." (Tr. at 84.) However, he later clarified:
Q. But it's a molding type machine for plastic; is that correct?
A. It's a particular — It's called vacuum, so it's not injection molding.
(Tr. at 85.)
 {¶ 39} Under re-direct examination by relator's counsel, the following exchange occurred:
Q. * * * [I]f there was stuck plastic in a platen in the die mold and if you utilized the wooden block to prevent the platen from closing, would it matter what length of tool you utilized in removing the stuck plastic?
A. No.
Q. Because the molds could not compress with the wooden block in place?
A. Correct.
* * *
Q. Well, the molds may have anywhere from four to eight or more product, so as the sheet enters the mold there are multiple products that are created after the vacuum com-pression occurs, so there is always going to be a front edge of that portion of the sheet plastic that runs through the machine and I guess I'm asking: Is it more likely than not would all of the product come loose if the front edge of the machine — front edge of the plastic was pried out?
A. I think there are so many variable that I —
Q. You don't really know?
A. I don't have an answer for that question.
(Tr. at 98-99; emphasis added.)
 {¶ 40} Following re-direct examination by relator's counsel, the following exchange occurred among the hearing officer, relator's counsel and Mr. Berman:
HEARING OFFICER * * *: I have one question: I want to know what kind of machine this is, so that I have a clear understanding of what sections I'm going to look at under the code, and is there any documentation or any evidence that can be pointed to which could assist me in this issue?
[Relator's counsel]: Yes and no. And the reason it's a difficult question is that only five of these machines were ever created. This was not a mass produced machine tool or product, and that's to the best of our knowledge from Mr. Berman's experience in purchasing. Very few of them exist in the world or at least in the United States. As best we can tell the proper description of this would be both a hydraulic and pneumatic.
MR. BERMAN: It's not pneumatic, it's vacuum.
[Relator's counsel]: It's a hydraulic vacuum compression thermal molding machine. It's a combination of various factors. I don't believe it's accurate to refer to it as a compression molding machine under 4121-1-13-04 because there is hydraulic components to it. I don't think it's accurate to refer to it solely as a hydraulic press, because there's the vacuum compression component to it.
(Tr. at 100-101; emphasis added.)
 {¶ 41} While relator asserts here that "there is no compression whatsoever involved in the thermoformer," the record overwhelmingly negates relator's assertion. Mr. Berman and his counsel repeatedly conceded that the machine produced compression.
 {¶ 42} Clearly, relator's second argument lacks merit.
 {¶ 43} For its third argument, relator claims that the 40 percent penalty imposed for the VSSR violation is being unlawfully calculated against claimant's working wage loss award.
 {¶ 44} Apparently, relator has not administratively challenged the calculation of the VSSR penalty to be paid on claimant's working wage loss award. There is no order of the commission in the record showing that the commission has ruled on this issue. Given that relator has not moved the commission for review of this issue, it would be premature for this court to address the issue here. In short, any issue relating to the proper calculation of the penalty to be paid is not ripe for review in mandamus. See State ex rel. Elyria Foundry v. Indus. Comm. (1998),82 Ohio St.3d 88; State ex rel. Avalon Precision Casting v. Indus.Comm., Franklin App. No. 04AP-558, 2005-Ohio-2297.
 {¶ 45} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.