DECISION
Sara Snell filed this action in mandamus seeking a writ which compels the Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation and which compels the commission to conduct additional proceedings and to issue a new order granting or denying the compensation.
In accord with Loc.R. 12(M), the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which includes a recommendation that we issue a writ directing the commission to conduct further proceedings. (Attached as Appendix A.)
Manor Care of Cincinnati, Inc., ("Manor Care") which is Ms. Snell's former employer has filed objections to the magistrate's decision. Counsel for Ms. Snell has filed a memorandum in response. The case is now before the court for a full, independent review.
Sara Snell was injured in 1979. Her workers' compensation claim has been recognized for cervical and shoulder sprain/strain, degenerative disc disease and cervical spondylosis.
Nineteen years later, she filed her application for PTD compensation. Her application was supported by a report from Mark Spears, D.C.
In October 1998, Ms. Snell was examined by commission specialist Kenneth Hanington, M.D. Dr. Hanington found Ms. Snell capable of sustained remunerative employment.
Dr. Spears and Dr. Hanington disagree as to Ms. Snell's medical capabilities, especially as to her ability to engage in the kind of activities frequently encountered in sedentary work. Because of the difference of opinion as to Ms. Snell's ability to perform sedentary-work-related activities, the magistrate found substantial discrepancies in their opinions and recommended that a writ be granted to compel a deposition of Dr. Hanington.
Manor Care argues in its objections that, taken as a whole, the two opinions are not different enough to meet the "substantial disparity" standard. However, taken as a whole, the two reports are substantially disparate because they reach different conclusions about Ms. Snell's ability to perform sedentary work. This disparity related to disparate medical findings about specific capabilities, such as range of motion and use of the hands to manipulate items over sustained periods of time. We agree with the magistrate's finding that a substantial disparity was demonstrated here.
As a result, we overrule the objections to the magistrate's decision. We adopt the findings of fact and conclusions of law contained in the magistrate's decision. We issue a writ of mandamus which compels the commission to vacate its order denying PTD compensation for Ms. Snell, and compels the commission to conduct further appropriate proceedings to determine Ms. Snell's entitlement to PTD compensation.
Objections overruled; writ granted.
LAZARUS and DESHLER, JJ., concur.
 IN MANDAMUS
Relator, Sara Snell, filed this original action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio to vacate its order denying compensation for permanent total disability ("PTD") and to issue an order granting her motion to take depositions of the commission's independent experts, followed by a new PTD hearing.
Findings of Fact:
1. In 1979, Sara Snell ("claimant") sustained an industrial injury, and her workers' compensation claim was allowed for cervical and shoulder sprain/strain, degenerative disc disease, and cervical spondylosis.
2. In July 1998, claimant filed a PTD application, stating that she was fifty-five years old, graduated from high school and technical college, and worked as a respiratory therapy technician and nurse's aide. On her vocational questionnaire, claimant stated that she supervised six to eight people and was trained in taking electrocardiograms, doing CPR, operating heart monitors, ventilators, suction machines, other pulmonary equipment, and computers. She stated that her duties required walking and standing for up to eight hours per day, lifting patients, and constant bending.
3. Claimant submitted the opinion of Mark Spears, D.C., who made detailed findings regarding range of motion. He also set forth the results of a grip-strength test. He estimated spinal impairment at 19%, shoulder impairment at 7%, and grip-strength impairment at 10%, for a whole-person impairment of 30%. On a checklist, Dr. Spears indicated that claimant could sit for six hours per day, stand for six hours, and walk for six hours, performing each activity without interruption for up to two hours at a time. He found that claimant could perform the following activities occasionally: bend, lift up to ten pounds, reach at waist level, and crawl. He stated that claimant could frequently kneel, climb stairs, and squat. Dr. Spears further opined that claimant could not hold her head in a flexed position "at all," such as for reading or using a computer monitor, and that she could not type or file. He further stated that there could be "no repetitive use of rt. arm in any position."
3. In October 1998, claimant was examined on behalf of the commission by Kenneth Hanington, M.D., who listed numerous observations, including the following: that claimant had a normal gait and stance, no spasm in the trapezius or parascapular muscles, and no atrophy. He measured strength at 4+ of 5 in the external rotators of the right shoulder, with 5 of 5 for all other strength tests. He found cervical range of motion to include 50 degrees extension, 50 degrees flexion, 40 and 50 degrees lateral rotation to the right and left, 50 and 40 degrees of lateral bending to the right and left, with complaints of discomfort in the right trapezious muscles. He found that grip strength was less in the dominant hand, which one would expect to be stronger.
Dr. Hanington found a 5% whole-person impairment. He opined that claimant could perform the following activities on an unrestricted basis: sit, stand, walk, lift up to ten pounds, reach, climb stairs, and use foot controls. He limited overhead reaching and climbing ladders but found that claimant could frequently use her hands for seizing, holding, grasping, and turning. He also found that claimant could lift up to twenty pounds for up to three hours per day.
4. In November 1998, claimant filed a motion for leave to take Dr. Hanington's deposition, alleging a "substantial disparity" between his report and that of Dr. Spears. The commission denied the motion in January 1999.
5. An employability assessment was provided on behalf of the commission by Janet Pearson, who observed that claimant's past work as a respiratory therapy technician and nurse assistant were semi-skilled jobs that required heavy strength, and that the work history demonstrated her ability to work with people, work under stress, change tasks often doing a variety of duties, and perform repetitive work. Ms. Pearson opined that claimant's educational levels were adequate for "entry-level and higher work" and that her familiarity with medical settings and experience working with people was a vocational asset. As to further training, Ms. Pearson found that claimant already has sufficient skills for entry-level work. Ms. Pearson opined that, if the medical report of Dr. Spears were adopted, claimant was not employable, but that, if the medical report of Dr. Hanington were adopted, the claimant could be employed as a hospital admitting clerk, outpatient clerk, order clerk, etc.
6. In March 1999, claimant filed a motion to take Ms. Pearson's deposition on the grounds that "there is no evidence in the file to support the vocational expert's conclusion that the injured worker is capable of performing entry level work." The commission denied the motion.
7. In June 1999, claimant's PTD application was heard. The commission accepted Dr. Hanington's medical restrictions. In regard to claimant's age of fifty-six years, the commission found that it was not a barrier to reemployment. It found that her education of high school and technical college were positive factors that would qualify her for entry or higher level work. The commission further found that claimant's ability to read, write and do basic math would enable her to acquire new skills to perform other employment. In regard to work history, the commission accepted Ms. Pearson's opinion that claimant had demonstrated the ability to work with people and had gained knowledge of medical settings, which would aid her in obtaining new employment. The commission concluded that claimant was able to engage in sustained remunerative employment and denied PTD compensation.
Conclusions of Law:
Claimant challenges the commission's denial of PTD, arguing that the commission had a legal duty to grant leave to take the depositions of Dr. Hanington and Ms. Pearson. At oral argument, claimant clarified the issues: (1) that constitutional requirements of due process require the commission to permit claimants to take the deposition of any commission specialist regardless of the content of the specialist's report; (2) that the commission abused its discretion in concluding that there was no substantial disparity between the reports of Drs. Hanington and Spears; and (3) that the commission abused its discretion in denying leave to take Ms. Pearson's deposition.
First, there is no constitutional right to take depositions in administrative proceedings. LTV Steel Co. v. Indus. Comm. (2000),140 Ohio App.3d 680, 689. However, a limited right has been provided by statute. Pursuant to R.C. 4123.09, parties may take depositions in workers' compensation claims with permission from the bureau or as ordered by the commission. The administrative code sets forth a procedure for requesting a deposition and states that the hearing administrator will grant a "reasonable" request. Ohio Adm. Code 4121-3-09(A)(6)(c). The code further states that the factors for considering the reasonableness of a request for deposition "include whether a substantial disparity exists between various medical reports on the issue that is under contest, whether one medical report was relied upon to the exclusion of others, and whether the request is for harassment or delay." Ohio Adm. Code 4121-3-09(A)(6)(d).
The courts have held in various circumstances that the commission was within its discretion to deny permission to take a physician's deposition. E.g., State ex rel. Firestone Tire Rubber Co. v. Indus. Comm. (1989), 47 Ohio St.3d 78; State ex rel. Pate v. Sybron Corp. (June 27, 2001) Franklin App. No. 01AP-76, unreported (Magistrate's Decision), adopted (November 27, 2001), unreported (Memorandum Decision); State ex rel. Walz v. Truck Cab. Mfg., Inc. (Feb. 11, 1998), Franklin App. No. 97AP-538, unreported (Magistrate's Decision), adopted (May 21, 1998), unreported (Memorandum Decision); State ex rel. Buga v. Indus. Comm. (June 29, 1998), Franklin App. No. 97AP-1508, unreported (Magistrate's Decision), adopted (Dec. 3, 1998), unreported (Memorandum Decision); State ex rel. Kirk v. Owens-Illinois, Inc. (Sept. 10, 1997), Franklin App. No. 97AP-5, unreported (Magistrate's Decision), adopted (Dec. 9, 1997), unreported (Memorandum Decision), affirmed (1998),83 Ohio St.3d 435.
In other circumstances, the courts have found that the commission abused its discretion in denying permission to take a deposition. See Williams v. Moody's of Dayton (1982), 1 Ohio St.3d 238; State ex rel. General Motors v. Indus. Comm. (1976), 47 Ohio St.2d 244; State ex rel. Stewart v. Indus. Comm. (Nov. 21, 2000), Franklin. App. No. 99AP-1096, unreported (Memorandum Decision).
 In regard to the deposition of vocational evaluators, R.C. 4123.09
provides that the deposition of any "witness" may be taken upon approval, although the administrative code does not provide specific procedures for witnesses other than physicians. In at least one case, however, this court found that the commission abused its discretion in refusing permission to take the deposition of a vocational evaluator. State ex rel. Kamp v. Miami Margarine Co. (June 19, 1997), Franklin App. No. 96AP-1317, unreported (Memorandum Decision) (adopting April 30, 1997 Magistrate's Decision). However, this court has also upheld a denial of leave to take the deposition of vocational experts. State ex rel. Tenoever v. Indus. Comm. (April 28, 2000), Franklin. App. No. 99AP-1349, unreported (Magistrate's Decision), adopted (Sept. 21, 2000), unreported affirmed (2001), 92 Ohio St.3d 70; Walz, supra.
In the present action, claimant has not demonstrated that the commission had a duty to authorize Ms. Pearson's deposition. First, there was no other vocational report that could provide a substantial disparity. Second, there were no material omissions or ambiguities on the face of Ms. Pearson's report that required an explanation by deposition or interrogatories. Cf. Kamp, supra.
In regard to whether there is a substantial disparity the PTD opinions of Drs. Hanington and Spears, the magistrate notes that there is no definition of substantial disparity in the PTD context, as there is for permanent partial disability ("PPD"). When the commission considers a PPD application, the entire issue is the numerical percentage, and a disparity of 15% constitutes a substantial disparity. Ohio Adm. Code 4121-3-15(A).
However, with PTD, the issue under contest is not the percentage of disability. Rather the issue is whether the claimant can perform sustained remunerative employment. The Ohio Supreme Court has cautioned that, when considering PTD, the commission must not attach undue significance to the numeric percentage because it does not give any indication of what the claimant can do in terms of working. Although the commission may note the percentage assessed by a physician, the commission must base the determination of medical capacity on what the claimant can and cannot do, functionally, in the workplace. State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78; State ex rel. Koonce v. Indus. Comm. (1994), 69 Ohio St.3d 436. In sum, a disparity of 15% or more in whole-person impairment does not automatically require approval of a deposition request in a PTD matter. Kirk, supra.
In determining whether the commission was obliged to grant a deposition, it is also important to recognize that the commission is entrusted with the task of evaluating and weighing expert reports presenting diverse opinions. Indeed, it is this diversity of opinion that requires the commission to exercise its fact-finding discretion. E.g., State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165; State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18. In PTD cases, expert opinions often are not only diverse but diametrically opposite, with one physician stating that claimant is totally impaired and another finding a capacity to perform an array of work activities.
The term "substantially disparate" in the administrative code indicates that the reports do not have to be essentially opposite for a deposition to be approved. The term and its context suggest that the physician's clinical findings (not necessarily their ultimate opinions) must be so divergent as to require some explanation — must be so far apart that, in the absence of a deposition or interrogatories, the finder of fact would lack an adequate basis for making a reasonable choice among the competing reports.
A comparison of the two reports shows as follows: that Dr. Hanington's range-of-motion findings were similar to Dr. Spears in a few areas, more restricted in several areas, and less restricted in other areas. Given that an injured worker may be more or less flexible on different days, and given that a claimant may consciously or unconsciously provide more or less effort depending on the examiner, some differences in range of motion are expected. The differences between these two reports as to range of motion do not create a substantial disparity in and of themselves.
In regard to work activities, Dr. Spears limited claimant to six hours of sitting and six hours of standing, whereas Dr. Hanington indicated that claimant could perform these activities during the entire workday. Dr. Spears stated an amount of time that claimant could perform these activities uninterrupted, but the form used by Dr. Hanington did not request an opinion on that matter. Dr. Spears found that claimant could bend occasionally (up to 1/3 of the time), while Dr. Hanington found that claimant could bend frequently (1/3 to 2/3 of the time). These restrictions do not present the type of disparity that imposes a legal duty to allow a deposition.
However, the restrictions on using the upper extremities were substantially disparate. Dr. Hanington stated that claimant could "frequently" handle objects manually (seizing, holding, grasping, and turning), but Dr. Spears stated that there could be no repetitive use of the right arm. Also, in regard to lifting, Dr. Spears limited claimant to "occasionally" lifting up to ten pounds and never lifting twenty pounds or more, whereas Dr. Hanington found that claimant could lift up to ten pounds on an unrestricted basis, and could lift up to twenty pounds for up to three hours. Thus, Dr. Hanington placed claimant in the "light" category of physical capacity, see Ohio Adm. Code4121-3-34(B)(2)(b), while Dr. Spears opined that claimant could not perform sedentary activities such as typing or reading a computer monitor "at all."
The commission had a duty to authorize the deposition because there was a substantial disparity between the two reports and claimant agreed to follow the deposition requirements. However, the magistrate notes that the claimant waited an extremely long time to seek mandamus relief, given the issue. This action was not filed until almost two years after authorization was denied. By the time the court would grant a writ, if any, it is unlikely Dr. Hanington would recall anything about the examination. Subjecting him to a cross-examination on a report issued years earlier appears unlikely to yield information beyond what is in the written report, but the magistrate finds that the delay does not bar the issuance of a writ because the disadvantage from delay falls heavily on claimant herself, who must pay the expenses of a deposition that is unlikely to provide additional evidence that is useful to her.
Accordingly, the magistrate recommends the court issue a writ directing the commission to vacate its order denying authorization to take Dr. Hanington's deposition, to issue an order authorizing it, to vacate the denial of PTD compensation, to hold a PTD hearing, and to issue an order granting or denying PTD compensation.