DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Clarence Monroe, filed this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("the commission") to vacate its order denying relator's requests for temporary total disability ("TTD") compensation and to enter orders granting said compensation.
 {¶ 2} Pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate of this court. On April 29, 2005, the magistrate rendered a decision, including findings of fact and conclusions of law, and therein recommended that this court grant a writ of mandamus ordering the commission to vacate its orders to the extent that they find a voluntary abandonment of employment (or that they invoke the doctrine of res judicata in finding a voluntary abandonment of employment) and to enter amended orders that adjudicate relator's requests for TTD compensation based upon the merits of the medical evidence submitted. (Attached as Appendix A.) Respondent, Sears Roebuck Co. ("Sears"), timely filed objections to the magistrate's decision, which are now before the court.
 {¶ 3} The magistrate concluded that the commission abused its discretion in finding that relator was ineligible for TTD compensation because he had voluntarily abandoned his employment when he retired from Sears in July 2002. The magistrate based this conclusion upon the magistrate's finding that relator's testimony was, at best, ambiguous, because it indicated that relator retired both because of his advancing age and because of the physical problems he was experiencing as a result of his allowed conditions.
 {¶ 4} According to the magistrate, the perceived ambiguity in relator's testimony is cured by Dr. Krahe's C-84 covering the date of retirement and continuing for ten months thereafter, and by the fact that Dr. Kravanya's office notes from the time period surrounding the retirement indicate that relator was suffering from pain, edema, and difficulty standing and changing positions. This, according to the magistrate, indicates that relator's retirement was, at least in part, injury-induced. The magistrate thus concluded that, pursuant to the case of State ex rel. Rockwell Internatl. v. Indus. Comm. (1988),40 Ohio St.3d 44, 531 N.E.2d 678, relator's retirement was not a voluntary abandonment of the work force.
 {¶ 5} The magistrate noted that while the claimant always has the burden of proving that the allowed conditions are the proximate cause of his or her disability, and to produce medical evidence to that effect, the employer has the burden to prove any claim of voluntary abandonment of the work force. The magistrate concluded that, in this case, the commission impermissibly shifted the burden to relator to prove that hedid not abandon the work force. The magistrate also pointed out that there is no indication that Sears ever raised the issue of voluntary abandonment at any stage of the administrative proceedings in this case, which explains why there is no evidence of record as to whether, and to what extent, relator had been working in the weeks preceding his retirement, a fact upon which the magistrate felt the staff hearing officer ("SHO") had relied in concluding that relator's retirement was not injury-induced.
 {¶ 6} Thus, the magistrate recommended that we issue a writ of mandamus ordering the commission to vacate its orders to the extent that the same include findings of a voluntary abandonment, and to enter amended orders adjudicating relator's requests for TTD compensation based upon the medical evidence presented.
 {¶ 7} Sears lodges three objections to the magistrate's decision. First, it argues that the magistrate erred in reevaluating or reweighing the evidence, including relator's credibility, when such evaluation is the sole province of the commission. Next, Sears argues that the magistrate erred by substituting his own judgment for that of the commission. Specifically, Sears argues that the magistrate failed to adhere to the "some evidence" standard of review, and instead looked at the same evidence (e.g., Dr. Kravanya's notes) differently than had the commission, and ultimately reached a different conclusion as to whether some evidence exists to support the commission's voluntary abandonment finding. Finally, Sears argues that the magistrate erred in deducing that the commission impermissibly shifted the burden to relator to prove that he had not voluntarily abandoned the work force.
 {¶ 8} First, we disagree with Sears that the determination whether the commission abused its discretion is dependent upon an evaluation of relator's credibility. In the commission's August 1, 2003 order, the SHO stated, "[a]t hearing, claimant testified that he retired in July, 2002due to his knee problems and due to the fact that he felt that it wastime to retire." (Emphasis added.) Contrary to the magistrate's conclusion, the SHO did not discredit this testimony. The SHO also did not make any finding that relator was being untruthful about the reasons for his retirement. The SHO simply felt that this testimony, without evidence that a "physician was disabling [relator] from employment" contemporaneously with the retirement decision (though Dr. Krahe later issued a C-84 covering the time period from June 25, 2002), compelled a finding of voluntary abandonment.
 {¶ 9} It is clear that the SHO felt that, as a matter of law, he was required to find that a voluntary abandonment had occurred, and that relator was thus ineligible for receipt of TTD compensation thereafter, because the C-84 was not completed at or near the time of the retirement decision. The magistrate disagreed, as a matter of law, that such a finding is required where, as here, the record reveals that the injured worker retired for two reasons, one of which was the allowed conditions; and when a doctor, who has examined the injured worker during the time period covered by the C-84, has certified the injured worker for TTD compensation for the time period following the retirement, even though the C-84 was issued nine months after the retirement decision was made.
 {¶ 10} The disagreement between the SHO and the magistrate is a legal, not a factual disagreement. This is why we reject the portion of the magistrate's decision wherein the magistrate states, "* * * the SHO's paraphrasing of relator's testimony creates an ambiguity as to its meaning. Did relator feel it was time to retire because of his injury or simply because of his advanced age? The SHO's order leaves the answer to pure speculation. The SHO's paraphrasing of relator's hearing testimony does not provide the some evidence to support a voluntary retirement."
 {¶ 11} We do not believe that the SHO's characterization of relator's testimony is ambiguous; rather, it indicates that relator had two reasons for retiring when he did. The SHO concluded that these reasons, coupled with the evidence in the file, compelled a voluntary abandonment finding, and the magistrate concluded otherwise. We agree with the magistrate's conclusion that, in the circumstances present in this case, a finding of voluntary abandonment is not compulsory. However, the magistrate did not evaluate credibility in reaching this conclusion. Accordingly, Sears' first objection is overruled.
 {¶ 12} Sears' second objection, however, is sustained, because we agree that the magistrate impermissibly substituted his own judgment for that of the commission with respect to the importance to be placed upon Dr. Kravanya's notes. The magistrate did so because he misconstrued the SHO's order. The magistrate states that the "SHO discredited relator's testimony that he retired due to his knee problems because the SHO found that `there is no contemporaneous medical evidence showing an inability to work at the time claimant chose to retire.' Dr. Kravanya's office notes written at or near the time relator retired conflict with the SHO's finding of `no contemporaneous medical evidence.'"
 {¶ 13} In reality, the SHO discredited the C-84 because of the fact that it was issued nine months after the retirement and because, in the SHO's view, Dr. Kravanya may not have known about the fact that relator may have worked at some point between his injury and his retirement, which knowledge, the SHO speculated, might have changed the doctor's impressions memorialized in her office notes. Though this method of evaluating the issue of voluntary abandonment was an abuse of discretion, given the evidence that was before the commission, such an abuse did not require the magistrate to examine the content of Dr. Kravanya's notes, and to weigh the importance of them, with respect to the voluntary abandonment issue.
 {¶ 14} The SHO felt "compelled" to find a voluntary abandonment because the C-84 covering a time period beginning just before relator retired was not issued by the physician contemporaneously with the retirement, but was issued roughly nine months later. This was an abuse of discretion. In wandering far from this basic legal premise and straying into an evaluation of the evidence and speculation as to the SHO's thought processes with respect to that evidence, the magistrate erred. Accordingly, we sustain Sears' second objection.
 {¶ 15} Sears' third objection is sustained because, in our view, the magistrate incorrectly concluded that the SHO impermissibly shifted the burden of proof to relator with respect to the issue of voluntary abandonment. The magistrate quoted a portion of the SHO's order regarding the lack of employment records in the file. But we note that the SHO clearly expected that if these were to be submitted, the employer, not relator, should submit them.
 {¶ 16} Moreover, unlike the magistrate, we do not infer from the language of the order that the SHO "wanted to know how much work relator missed between the April 21, 2002 injury and the July retirement in order to assess whether the left knee condition might have motivated relator's decision to retire," which, if true, would call into question whether the SHO impermissibly placed the burden of proving involuntariness upon relator. Rather, because relator testified that he "was unclear as to what periods he worked or may have missed from work between the date of injury and his July retirement, and because of "a lack of knowledge on Dr. Kravanya's part that claimant may have been working during some of the disability period that she has certified," the SHO was persuaded that those office notes and Dr. Krahe's C-84, issued nine months after the retirement, do not militate against a finding of voluntary abandonment. The SHO did not, however, improperly allocate the burden of proof. Accordingly, we sustain Sears' third objection.
 {¶ 17} Nonetheless, because we agree with the magistrate's ultimate conclusion — that the commission abused its discretion and erred as a matter of law in concluding that the record compelled a finding of voluntary abandonment — we adopt the magistrate's decision, with the modifications noted hereinabove, and we grant a writ of mandamus that is slightly different in substance from that recommended by the magistrate.
 {¶ 18} The evidence before the commission consisted in two C-84's from treating physicians, which together covered the period for which TTD was requested; the physicians' office notes; and relator's statement that he retired both because of his allowed conditions and because he felt it was time to do so. We conclude that this record does not contain "some evidence" to support the commission's finding that relator voluntarily abandoned his employment. Accordingly, we grant the requested writ of mandamus, and order the commission to vacate its prior orders denying TTD. We further order that the commission hold a new hearing on the issue of relator's requests for TTD compensation.
Objections sustained in part, overruled in part; writ of mandamus granted.
Bryant and Klatt, JJ., concur.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
[State ex rel.] Clarence Monroe, :
 Relator, :
v. : No. 04AP-1198
The Industrial Commission of Ohio : (REGULAR CALENDAR)
and Sears Roebuck Co., :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on April 29, 2005 Shapiro, Shapiro and Shapiro Co., L.P.A., Daniel L. Shapiro and LeahP. VanderKaay, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
Reminger Reminger Co., L.P.A., Ronald A. Fresco and Rebecca R.Shrader, for respondent Sears Roebuck Co.
 IN MANDAMUS {¶ 19} In this original action, relator, Clarence Monroe, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's requests for temporary total disability ("TTD") compensation, and to enter orders granting TTD compensation.
Findings of Fact:
 {¶ 20} 1. On April 21, 2002, relator sustained a left knee injury while employed as a salesman for respondent Sears Roebuck Co. ("Sears"), a self-insured employer under Ohio's workers' compensation laws. On that date, relator twisted his left knee while attempting to remove a boxed lawnmower from a high shelf. Relator was 77 years old on the date of his injury. His date of birth is October 25, 1926.
 {¶ 21} 2. On April 30, 2002, nine days after the injury, relator was examined by attending physician Margaret A. Kravanya, D.O. Dr. Kravanya's office note of April 30, 2002 states:
* * * [W]hile working at Sears Hardware on 04/21/02, he was lifting a box with a lawnmower in it, from a high shelf, and during the process he twisted his left knee, giving out and experienced sudden pain, followed by inability to weight bear on his left leg. The pain of his knee and left leg continued to increase in severity. He went to SouthPointe Emergency for evaluation. DX: Left knee strain, placed on Advil and given instructions to follow up with primary physician.
Today the pain and stiffness of the left leg and knee persist and finds difficulty walking, standing, and ascending and descending stairs.
Objective findings: edema of the left knee with decreased range of motion in flexion and extension. Tenderness upon palpation of the medial area of knee and lower leg.
Elastic wrap applied for immobilization of knee joint. Advised continued ice pack applications; and increase ibuprofen to 600 mg tid.
DX: 844.0, left knee strain[.]
 {¶ 22} 3. On May 6, 2002, relator was again examined by Dr. Kravanya. Dr. Kravanya wrote:
Shows slight improvement with decreased pain and edema of left knee; range of motion improved in flexion and extension, but walks with limp, due to difficulty with weight bearing[,] noted problems with changing positions from standing to sitting[.]
DC ibuprofen and RX Naprosyn 500 mg tid, pc.
Instructed on therapeutic exercises for quads and hamstring strengthening.
DX: acute left knee strain.
 {¶ 23} 4. On June 24, 2002, relator was again examined by Dr. Kravanya. Dr. Kravanya wrote:
Attempting to perform physical activities and finding increased pain and stiffness of left knee.
Edema and restricted motion of knee again present.
Req: X-ray of left knee[.]
Left knee wrapped with elastic bandage. Disp: Celebrex 200 mg qd[.]
 {¶ 24} 5. On June 27, 2002, Dr. Kravanya telephoned relator. On that date, Dr. Kravanya wrote:
Phone — pt Informed on X-ray findings Osteoarthritis present[.]
The injury, in my medical opinion, aggravated the quiescent condition. Continue Celebrex 200 mg qd[.]
 {¶ 25} 6. On July 29, 2002, relator was again examined by Dr. Kravanya. Dr. Kravanya wrote:
Left knee continues to cause pain and difficulty in standing and changing positions.
Negative edema today, positive tenderness to palpation and with range of motion testing.
Advised on exercises for strengthening knee joint.
 {¶ 26} 7. On October 17, 2002, relator was examined by orthopedic surgeon David H. Krahe, D.O., as a new patient upon referral from Dr. Kravanya. On October 17, 2002, Dr. Krahe wrote:
HX: Clarence is a new patient who is seen today [upon] referral from Dr. Kravanya. This 75 [sic] year old male fell at work, Sears Hardware. He fell off some boxes and injured his left knee. Was seen in the emergency room and X-rays were taken. He was treated conservatively. He subsequently had an MRI of his knee done. He has been taking two Advil three times a day and wrapping his knee. He has been functioning rather well. It bothers him when he walks for extended periods of time. He does get some clicking in his knee with pain. We have not reviewed the X-rays [as] they are at Sagamore.
MRI: His MRI was reviewed and he does have maybe a partial tear of his ACL and also a tear of the medial meniscus. He has a mild effusion in his left knee.
EXAM: On exam this is a very pleasant 75 [sic] year old male in no acute distress at the present time. He has no effusion in his left knee. He has a full range of motion. He has pain with palpation on both the medial and lateral joint lines, more medially. He has no collateral instability. He get[s] slight pain with a Lachmans but he is not unstable that I can detect today. He does get pain with McMurrays consistent with a medial meniscal tear.
IMP: Degenerative medial meniscal tear left knee and sprain ACL left knee.
REC: We are going to treat him conservatively and get him on a quad rehab exercise program, a knee sleeve, and further recommendations pending his results with the exercise program.
 {¶ 27} 8. On January 23, 2003, relator was again seen by Dr. Krahe. Dr. Krahe wrote:
HX: Clarence is a follow up on his left knee. It is still bothering him. He has been doing the exercises and taking Advil but no real relief in his symptoms. It bothers him when he first gets up, it is stiff and it bothers him after he has been walking. He does get some clicking.
EXAM: His exam he has no effusion and a negative Lachmans. He has a full range of motion. He has pain with a valgus stress and pain on the medial joint line. He has a positive McMurrays.
IMP: Tear medial meniscus and early degenerative arthritis left knee.
REC: He really does not want to entertain surgery at this point in time. We are going to get him into therapy. I am going to place him on Celebrex with samples and a script. If he fails to improve we'll see him back and consider an injection and/or arthroscopy.
 {¶ 28} 9. On March 18, 2003, Dr. Krahe completed a C-84. On the C-84, Dr. Krahe certified TTD from June 25, 2002 to an estimated return-to-work date of April 27, 2003.
 {¶ 29} 10. On May 14, 2003, relator filed a claim for workers' compensation benefits. Sears certified the claim for: "left knee strain."
 {¶ 30} 11. Following a June 10, 2003 hearing, a district hearing officer ("DHO") issued an order stating:
It is the order of the District Hearing Officer that the C-84 Request For Temporary Total Compensation filed by Injured Worker on 03/18/2003 is granted to the extent of this order.
The parties at hearing waived any defect in notice with respect to additional allowance issue.
This claim is additionally allowed for a torn left medial meniscus. This is based on the 05/27/2003 report of Dr. Stearns.
Temporary total compensation from 06/25/2002 through 10/16/2002 is denied because there is no medical evidence in the file from a physician who treated the injured worker during this period that the injured worker was temporarily and totally disabled during this period.
Temporary total compensation is ordered paid from 10/17/2002 through 05/27/2003 and to continue upon submission of appropriate medical evidence. This is based on the 03/18/2003 C84 completed by Dr. Krahe and the 05/07/2003 report of Dr. Stearns.
 {¶ 31} 12. Sears administratively appealed the DHO order of June 10, 2003.
 {¶ 32} 13. On July 15, 2003, Dr. Kravanya completed a C-84 certifying TTD from June 25 through October 17, 2002.
 {¶ 33} 14. On July 31, 2003, Sears' appeal was heard by a staff hearing officer ("SHO"). The hearing was not recorded. Following the hearing, the SHO issued an order that vacates the DHO's order. The SHO's order states:
The Staff Hearing Officer notes that the self-insured employer hasadditionally recognized this claim for "TORN LEFT MEDIAL MENISCUS."
The C-84 request for Temporary Total Compensation, filed 03/18/2003, which requests Temporary Total Compensation from 06/25/2002 through 04/27/2003 and continuing is denied. At hearing, claimant testified that he retired in July, 2002 due to his knee problems and due to the fact that he felt that it was time to retire. The Staff Hearing Officer notes that there is no contemporaneous medical evidence showing an inability to work at the time claimant chose to retire. The 07/15/2003 C-84 report of Dr. Kravanya purports to disable claimant from 06/25/2002 to 10/17/2002 but her office notes from that time period do not indicate total disability. At hearing, claimant was unclear as to what periods he worked or may have missed from work between the date of injury and his July retirement. No employment records have been submitted by the employer. The Staff Hearing Officer must conclude from the evidence currently in the record that claimant took a voluntary retirement in July, 2002 at a time when no physician was disabling him from employment.
Based upon the above finding of voluntary retirement and a lack of knowledge on Dr. Kravanya's part that claimant may have been working during some of the disability period that she has certified, the Staff Hearing Officer finds that the payment of Temporary Total Compensation is not warranted in this claim.
(Emphasis sic.)
 {¶ 34} 15. On August 29, 2003, another SHO mailed an order refusing relator's administrative appeal from the SHO order of July 31, 2003.
 {¶ 35} 16. Following a March 4, 2004 examination, Dr. Krahe completed a C-84 certifying TTD from March 4, 2004 to an estimated return-to-work date of June 4, 2004. Apparently, this C-84 was filed on May 10, 2004.
 {¶ 36} 17. Following a July 1, 2004 hearing, a DHO issued an order stating:
The District Hearing Officer finds that the issue of the C-84, filed 05/10/2004, is res judicata. * * * The District Hearing Officer finds that the Staff Hearing Officer, on 07/31/2003, found that the injured worker voluntarily abandoned his employment in July, 2002. As a result, temporary total disability compensation for the period 03/04/2004 through 06/03/2004 and continuing, is not payable — in other words, the decision has already been made. Due to the voluntary abandonment finding, this Hearing Officer cannot now award temporary total disability compensation.
 {¶ 37} 18. Relator administratively appealed the DHO order of July 1, 2004.
 {¶ 38} 19. Following an August 27, 2004 hearing, an SHO issued an order stating:
The order of the District Hearing Officer, from the hearing dated 07/01/20004, is modified to the following extent. Therefore, the C-84 filed 05/10/2004, is denied as being res judicata having been already been determined, by Staff Hearing Officer order of 07/31/2003, that a voluntary abandonment of employment has occurred herein. The balance of the District Hearing Officer order of 07/01/2004 is affirmed in its entirety and incorporated herein, as if fully rewritten.
(Emphasis sic.)
 {¶ 39} 20. On September 22, 2004, another SHO mailed an order refusing relator's administrative appeal from the SHO order of August 27, 2004.
 {¶ 40} 21. On November 4, 2004, relator, Clarence R. Monroe, filed this mandamus action.
Conclusions of Law:
 {¶ 41} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 42} It is well-settled that a voluntary abandonment of the former position of employment can bar TTD compensation. However, an injury-induced abandonment is never considered to be voluntary. State exrel. Rockwell Internatl. v. Indus. Comm. (1988), 40 Ohio St.3d 44.
 {¶ 43} It is also well-settled that the claimant does not have a burden of disproving a voluntary abandonment of the former position of employment in order to show entitlement to TTD compensation. State exrel. Superior's Brand Meats, Inc. v. Indus. Comm. (1997),78 Ohio St.3d 409. The burden of proof with respect to voluntary abandonment falls upon the employer or the administrator. Id.
 {¶ 44} The claimant's burden is to persuade the commission that there is a proximate causal relationship between his work-related injuries and disability and to produce medical evidence to this effect. State ex rel.Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, 83. It is the employer's burden to raise and produce evidence on its claim that other circumstances independent of the allowed conditions caused the claimant to abandon the job market. Id. at 84.
 {¶ 45} Analysis begins with the observation that there is no evidence in the record showing that the employer or the administrator ever raised a claim that relator voluntarily abandoned his employment at Sears. Counsel for Sears was questioned by the magistrate on this point at oral argument. There is clearly no contention here that Sears ever claimed administratively that relator voluntarily abandoned his employment at Sears.
 {¶ 46} Apparently, the voluntary abandonment issue was raised sua sponte by the SHO at the July 31, 2003 hearing. The DHO does not address a voluntary abandonment issue. While it is not necessarily improper for the hearing officer to inquire regarding the possibility of a voluntary abandonment and to render a finding in this regard, knowing that the employer did not raise a voluntary abandonment claim explains why no employment records were submitted by the employer, as the SHO noted in his order.
 {¶ 47} The SHO heavily relied upon relator's hearing testimony which was merely paraphrased (rather than quoted) in the order as follows:
* * * [C]laimant testified that he retired in July, 2002 due to his knee problems and due to the fact that he felt that it was time to retire. The Staff Hearing Officer notes that there is no contemporaneous medical evidence showing an inability to work at the time claimant chose to retire. * * *
 {¶ 48} The SHO discredited relator's testimony that he retired due to his knee problems because the SHO found that "there is no contemporaneous medical evidence showing an inability to work at the time claimant chose to retire." Dr. Kravanya's office notes written at or near the time relator retired conflict with the SHO's finding of "no contemporaneous medical evidence."
 {¶ 49} Dr. Kravanya's June 24, 2004 office note states "[a]ttempting to perform physical activities and finding increased pain and stiffness of left knee[.] Edema and restricted motion of knee again present."
 {¶ 50} Dr. Kravanya's June 24, 2004 office note is indeed contemporaneous medical evidence of an inability to work at or near the July retirement, particularly when the office note is read with Dr. Kravanya's subsequent C-84 wherein she opines that relator is temporarily and totally disabled beginning June 25, 2002.
 {¶ 51} Dr. Kravanya's July 29, 2004 office note states:
Left knee continues to cause pain and difficulty in standing and changing positions.
Negative edema today, positive tenderness to palpation and with range of motion testing.
Advised on exercises for strengthening knee joint.
 {¶ 52} Dr. Kravanya's July 29, 2004 office note is indeed contemporaneous medical evidence of an inability to work at or near the July retirement, particularly when it is read with Dr. Kravanya's subsequent C-84.
 {¶ 53} Perhaps what the SHO meant to say in his order is that there is no contemporaneous medical opinion of an inability to work. If that is what the SHO meant to say then indeed there is no contemporaneous medical opinion of an inability to return to the former position of employment at or near the time of relator's retirement.
 {¶ 54} However, because relator did not file his claim for workers' compensation benefits until over one year from the date of his injury, presumably, Dr. Kravanya was not asked for a disability opinion at or near the July retirement. Thus, even if the SHO actually meant to rely on the absence of a contemporaneous medical opinion of disability, that does not discredit Dr. Kravanya's contemporaneous office notes indicating that relator was experiencing difficulty with the left knee at or near the time of his July retirement. In short, the SHO abused his discretion in his analysis of the medical evidence of record.
 {¶ 55} The SHO's order also strongly suggests that the SHO shifted the burden of proof to relator when he wrote:
* * * At hearing, claimant was unclear as to what periods he worked or may have missed from work between the date of injury and his July retirement. No employment records have been submitted by the employer. * * *
 {¶ 56} Relator had no burden to produce Sears' employment records regarding his attendance at work. Apparently, the SHO wanted to know how much work relator missed between the April 21, 2002 injury and the July retirement in order to asses whether the left knee condition might have motivated relator's decision to retire. The SHO cannot draw an inference that relator experienced no problems at work with his left knee simply because relator was unclear as to when he missed work in the absence of Sears' employment records.
 {¶ 57} Here, respondents argue that relator gave two reasons for retiring — his knee problems and that he felt that it was time to retire. According to respondents, the second of the two reasons, that he felt that it was time to retire, is the some evidence supporting a voluntary retirement. Respondents' argument is not persuasive.
 {¶ 58} To begin, the SHO's paraphrasing of relator's testimony creates an ambiguity as to its meaning. Did relator feel it was time to retire because of his injury or simply because of his advanced age? The SHO's order leaves the answer to pure speculation. The SHO's paraphrasing of relator's hearing testimony does not provide the some evidence to support a voluntary retirement.
 {¶ 59} Based upon the above analysis, this magistrate concludes that the commission abused its discretion by finding a voluntary abandonment of employment.
 {¶ 60} Because the July 31, 2003 SHO order constitutes an abuse of discretion to the extent that a voluntary abandonment is found, the SHO order of August 27, 2004 that denied a further request for TTD compensation on res judicata grounds, also constitutes an abuse of discretion.
 {¶ 61} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its orders to the extent they find a voluntary abandonment of employment or render a finding of res judicata based upon a prior finding of voluntary abandonment of employment, and to enter amended orders that adjudicate relator's requests for TTD compensation based upon the merits of the medical evidence submitted.