DECISION
{¶ 1} Relator, Lancaster Colony Corporation d/b/a Pretty Products, Inc., has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its order denying relator's motion to *Page 2 
suspend the claim of respondent, Debra VanSickle, pursuant to R.C.4123.651(C), and to enter an order suspending the claim.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. On November 21, 2007, the magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) No objections have been filed to that decision.
 {¶ 3} Based upon an examination of the magistrate's decision and an independent review of the evidence, and finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, relator's request for a writ of mandamus is hereby denied.
Writ denied.
 FRENCH and DESHLER, JJ., concur. DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION {¶ 4} In this original action, relator, Lancaster Colony Corporation d/b/a Pretty Products, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's motion to suspend the claim *Page 4 
of respondent Debra VanSickle ("claimant"), pursuant to R.C.4123.651(C), and to enter an order suspending the claim.
Findings of Fact: {¶ 5} 1. On March 14, 1998, claimant sustained an industrial injury which is allowed for "left knee contusion; medial meniscus tear left knee; reflex sympathetic dystrophy; depressed psychosis," and is assigned claim number 98-362478. On the date of injury, claimant was employed by relator, a self-insured employer under Ohio's workers' compensation laws.
 {¶ 6} 2. Apparently, in early November 2006, claimant filed an application for permanent total disability compensation.
 {¶ 7} 3. By letter dated November 17, 2006, relator's counsel requested that claimant's counsel have his client execute an enclosed Social Security Administration ("SSA") form captioned "Consent for Release of Information" and an enclosed form (C-101) of the Ohio Bureau of Workers' Compensation ("bureau") captioned "Authorization to Release Medical Information."
 {¶ 8} 4. By letter dated November 28, 2006, claimant's counsel forwarded to relator's counsel a document prepared by claimant's counsel that claimant had signed. In the letter, the document was referred to as a "Medical Authorization signed by Ms. VanSickle." However, claimant did not sign bureau form C-101 as requested. Claimant's counsel advised that claimant would not be providing the SSA release.
 {¶ 9} 5. On December 5, 2006, relator moved to suspend the claim. In support, relator submitted the letters dated November 17 and 28, 2006. Relator indicated in its *Page 5 
motion that the basis for the requested suspension was claimant's failure to execute the SSA release.
 {¶ 10} 6. By letter dated December 6, 2006, relator's counsel wrote to claimant's counsel:
 We have received your letter of November 28, 2006, and we are disappointed that Ms. VanSickle has chosen not to make her Social Security records available for review. Because those records almost certainly contain pertinent medical information regarding Ms. VanSickle's alleged injuries, it is our position that we are entitled to the information contained therein pursuant to R.C. § 4123.58. Please find enclosed our Motion to Suspend the Claim which was filed on December 5, 2006.
 Furthermore, in order to better understand and verify Ms. VanSickle's complaints of injury, Pretty Products formally requests a list of all medical providers for which Ms. VanSickle has sought or received treatment or examination, however tangential, for each of her alleged symptoms and injuries she bases her claim upon. We expect this list to cover the past ten years of Ms. VanSickle's medical history, and we request that it include all medical providers including those with the Veterans' Administration or Social Security Administration.
 {¶ 11} 7. By letter dated December 7, 2006, claimant's counsel responded:
 * * * [Y]our records should show all doctors that this injured worker has been treated or examined by since her date of injury. You have all that information already. * * *
 {¶ 12} 8. By letter dated December 7, 2006, claimant's counsel wrote to the commission's hearing administrator of the Columbus office:
 The employer has filed a Motion to Suspend because they want a release signed by Ms. VanSickle allowing them to obtain her social security records. I know of no requirement that there be a Social Security Disability authorization provided to the employer, nor do I know of any authority that permits the employer to suspend the claim for this reason. *Page 6 
Therefore, we object to the Motion to Suspend and request the Motion be denied.
 {¶ 13} 9. On December 12, 2006, the hearing administrator mailed to the parties a compliance letter that denies relator's motion to suspend the claim. The compliance letter states:
 The employer has made application to be afforded relief under Ohio Revised Code Section 4123.651(C) for the reason that the injured worker has failed to provide the employer with a current signed medical release as required by Ohio Revised Code 4123.651(B).
 The suspension request is denied for the reason that the Injured Worker has submitted a signed BWC medical release as required by ORC 4123.651.
 Following review of the claim file and relevant evidence, it is the finding of the Hearing Administrator that the employer has not demonstrated good cause for the relief requested. * * *
 {¶ 14} 10. Relator timely objected to the compliance letter.
 {¶ 15} 11. On December 14, 2006, relator's counsel wrote to claimant's counsel:
 I am in receipt of your letter of December 7, 2006. We are entitled to know all of the physicians with whom Debra VanSickle has treated. When Ms. VanSickle's independent medical examination is scheduled, the doctor will need to know both her occupational and non-occupational conditions as they may inter-relate in order to determine whether M[s]. VanSickle is capable of sustained remunerative employment. How conditions may impact or inter-relate with her allowed conditions is of critical importance. Furthermore, if she is receiving Social Security benefits, there would certainly be entitlement to an offset.
 As you are also aware, Ms. VanSickle obtained duplicate prescription medications from a physician who did not seek reimbursement from the employer for the workers' compensation claim. Therefore, it is quite obvious that receipt of this medical information is critical to the evaluation *Page 7 
of her case. We do not wish to unduly delay the process, however, you have obtained a report from a non-treating physician claiming that Ms. VanSickle is permanently totally impaired and we need the medical information to appropriately assess her condition.
(Emphasis sic.)
 {¶ 16} 12. By letter dated December 18, 2006, claimant's counsel responded by asserting that relator had been provided the information regarding claimant's doctors at her deposition.
 {¶ 17} 13. By letter dated December 26, 2006, relator's counsel declared that claimant's counsel was mistaken in stating that claimant's deposition had been taken
 {¶ 18} 14. On December 29, 2006, relator's objection to the compliance letter was heard by a staff hearing officer ("SHO"). The hearing was recorded and transcribed for the record.
 {¶ 19} 15. During the hearing, relator's counsel submitted a medical report dated July 19, 2006 from Charles V. Barrett, D.O. Dr. Barrett is a physician associated with the Union Hospital Pain Management Center ("PMC") located at Dover, Ohio. Dr. Barrett's report states:
 SUBJECTIVE: The patient was seen today on 7/19/06. The patient has been treated by Dr. Cameron and her psychiatrist as of late. Also, there appears to be continued cross talk on medications between these two physicians, including the same class of antidepressant being prescribed at night for sleep. The patient's main complaint is one of lower extremity pain from the waist down. The left is greater than the right leg. Currently, she has a pain pump in which is refilled by home health. The pain level is fairly well controlled. We did discuss the problems she had.
 The problem that she had is that she was seeing Dr. Potts, a family doctor in Southern Ohio, who was prescribing long-acting *Page 8 
opioids on top of the morphine pump, certainly a dangerous practice. We have subsequently not prescribed any opioid therapy for quite some time. She is currently on baclofen, Topamax and Lidoderm through our office. The medications do help the neuropathic pain described and the intermittent muscle spasm that she occurs in the low back from the decreased ambulatory status.
 {¶ 20} 16. During the hearing, relator's counsel submitted a written agreement that claimant executed on June 10, 1999 with the PMC. The agreement sets forth the conditions or terms of claimant's treatment at the PMC. One of those conditions is:
 * * * Obtaining other controlled medications from any other individual or physician without informing the Pain Management Center will be considered a violation of this agreement. The only exception is medications prescribed while I am admitted in a hospital.
 {¶ 21} 17. Apparently, relator's counsel also submitted at the hearing a report from the PMC dated November 15, 2006, which states:
 The patient was seen today on 11/15/06. We had a lengthy discussion today with her family and herself concerning her pain problem. * * * She no longer sees Dr. Pott[s], her physician who initially allowed her [to] break her opioid contract. She has a morphine pump and spinal cord stimulator placed for this pain pattern which is work related. We discussed the fact that she does extremely well for a month at a time and then has exacerbations of her pain, usually related to some emotional stress. * * * She no longer receives any medications from Dr. Potts.
 * * *
 * * * We have resigned an opioid contract today and will utilize the morphine pump and the spinal cord stimulator which is covering the pain pattern. * * *
 {¶ 22} 18. During the hearing, relator's counsel asserted that he did not know "where Dr. Potts is." Counsel further asserted: "I don't know all the doctors. I think it's the *Page 9 
Claimant's responsibility to provide me with a list of names and addresses so I can send releases in order to appropriately defend."
 {¶ 23} 19. During the hearing, relator's counsel also complained that he had only received a so-called "modified release," rather than the bureau's standard release. Later, counsel referred to it as a "restricted release." At the conclusion of his opening statement to the SHO, relator's counsel stated:
 * * * There was a delay in getting us the initial releases, and now we've got restricted releases, and we don't know which physicians to send the releases to other than Dr. Barrett and the psychiatrist in this particular case.
 {¶ 24} 20. Following the December 29, 2006 hearing, the SHO issued an order denying relator's motion to suspend the claim. The SHO's order explains:
 It is the order of the Staff Hearing Officer that the Employer's Motion, filed 12/26/2006, is DENIED.
 The Staff Hearing Officer denies the employer's objection to the 12/12/2006 compliance Letter. As stated in the Compliance Letter the injured worker has signed a release for medical records as required by ORC 4123.651.
 The employer is requesting that they be allowed to obtain the injured worker's Social Security records. The injured worker's counsel has refused to allow the injured worker to release those saying that there is no authority for that.
 The Staff Hearing Officer agrees with the injured worker's counsel and finds that there is no legal authority for the Industrial Commission to compel the release of Social Security records to an employer. In the case of GMRL, Inc. vs. Industrial Commission, (Ohio App. 10th Dist.) No. 03 Ap-931, 2004, the court stated "as noted by both the Commission and the Magistrate, there is no legal authority to compel a claimant to execute a release for Social Security records. This objection is, therefore, overruled." The GMRL case is precisely on point. Therefore, as stated previously, *Page 10 
the employer's appeal is denied. The Compliance Letter stands as is. The claim is not suspended.
(Emphasis sic.)
 {¶ 25} 21. On February 8, 2007, the commission mailed an order denying relator's request for reconsideration of the SHO's order of December 29, 2006.
 {¶ 26} 22. On April 3, 2007, relator, Lancaster Colony Corporation d/b/a Pretty Products, Inc., filed this mandamus action.
Conclusions of Law: {¶ 27} In its brief, relator states that the following issues are before this court:
 [One] Did the Industrial Commission of Ohio abuse its discretion in failing [to] suspend Debra VanSickle's claim until she disclosed all physicians who have treated her for conditions related to her claim, or in the alternative, until she released her Social Security records for review?
 [Two] Did the Industrial Commission of Ohio abuse its discretion in failing [to] suspend Debra VanSickle's claim until she signed a valid medical release?
 {¶ 28} Finding no abuse of discretion as to either issue, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 29} R.C. 4123.651 states:
 (B) The bureau of workers' compensation shall prepare a form for the release of medical information, records, and reports relative to the issues necessary for the administration of a claim under this chapter. The claimant promptly shall provide a current signed release of the information, records, and reports when requested by the employer. The employer promptly shall provide copies of all medical information, records, and reports to the bureau and to the claimant or his representative upon request. *Page 11 
 (C) If, without good cause, an employee * * * refuses to release or execute a release for any medical information, record, or report that is required to be released under this section and involves an issue pertinent to the condition alleged in the claim, his right to have his claim for compensation or benefits considered, if his claim is pending before the administrator, commission, or a district or staff hearing officer, or to receive any payment for compensation or benefits previously granted, is suspended during the period of refusal.
 {¶ 30} Ohio Adm. Code 4121-3-09(A)(3) states:
 The injured worker must provide, when requested, a current signed medical release as required by division (B) of section 4123.651 of the Revised Code. Should an injured worker refuse to provide a current signed medical release as requested, then the claim shall be referred to the hearing administrator so that an order suspending the claim may be placed pursuant to division (C) of section 4123.651 of the Revised Code. Medical releases are to be executed on forms provided by the bureau of workers' compensation, the commission, or on substantially similar forms.
 {¶ 31} Ohio Adm. Code 4121-3-09(A)(6)(a) states:
 If an injured worker without good cause * * * refuses to provide or execute a current signed medical release as required by section 4123.651
of the Revised Code, the right to have the injured worker's claim for compensation or benefits considered, if the claim is pending before the commission, the administrator or district or staff hearing officer or to receive any payment of compensation or benefits previously granted is suspended during the period of refusal.
 {¶ 32} Turning to the first issue, relator cites no statute or rule requiring the claimant to disclose all of her treating physicians in the manner that relator has requested such information in this case. While R.C. 4123.651 and the rules supplementing the statute demand that the claimant provide a current signed medical release, they do not require the claimant herself to respond to relator's verbal or written requests to identify all *Page 12 
of her treating physicians. Accordingly, the commission did not abuse its discretion in refusing to suspend the claim even though relator complains that it cannot locate the Dr. Potts identified in the July 19, 2006 report of Dr. Barrett as a physician who treated claimant. Whether or not further information from claimant regarding the identity of Dr. Potts might be helpful to relator does not create a clear legal right that can be enforced in mandamus. In the absence of a statute or administrative rule supplementing a statute that grants to relator a clear legal right to compel from the claimant the information that relator seeks, relator cannot obtain relief in mandamus to compel the commission to suspend the claim under R.C. 4123.651.
 {¶ 33} Moreover, contrary to relator's assertion, claimant's failure to provide the information that relator seeks regarding her treating physicians does not somehow create for relator a clear legal right to compel claimant to execute an SSA release form as an alternative to claimant's failure to respond to relator's requests for information. In fact, this court has held that there is no legal authority to compel a claimant to execute a release for social security records. [State exrel.] GMRI, Inc. v. Indus. Comm., Franklin App. No. 03AP-931,2004-Ohio-3842.
 {¶ 34} As previously noted, the second issue presented by relator here is whether the commission abused its discretion in failing to suspend the claim until claimant signs the bureau's C-101 form captioned "Authorization to Release Medical Information."
 {¶ 35} In the magistrate's view, relator never made it clear to the SHO that it was challenging the validity of the medical authorization that claimant did provide to relator through her attorney. While relator's counsel referred to the signed medical authorization as a "modified release" and as a "restricted release," relator's counsel never asked the *Page 13 
SHO to determine whether the signed medical authorization was invalid because it allegedly is not "substantially similar" to the form provided by the bureau.
 {¶ 36} Here, relator presents arguments as to why the medical authorization provided by claimant is not "substantially similar" to the form provided by the bureau. However, those arguments were not presented to the SHO and, thus, cannot be presented here. State ex rel. QuartoMining Co. v. Foreman (1997), 79 Ohio St.3d 78, 81-83.
 {¶ 37} Clearly, the commission, through its SHO, did not abuse its discretion in failing to determine that the medical authorization provided by claimant was invalid under R.C. 4123.651 when relator never asked the commission to determine its validity.
 {¶ 38} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1