DECISION
{¶ 1} Relator, Brush Wellman, Inc., commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding R.C. 4123.56(B) wage loss compensation from *Page 2 
December 12, 2003 to April 3, 2004 to claimant, Christina M. Moomey, and to enter an order denying said compensation.
 {¶ 2} Pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found that Dr. Kahn's medical reports are some evidence supporting the commission's determination that claimant's chronic beryllium disease prevents her from returning to her former position of employment as a mill hand operator. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.
 {¶ 3} Relator objects to the magistrate's decision arguing that Dr. Kahn's reports do not support the commission's decision. Relator contends that Dr. Kahn's reports do not indicate that the claimant has any impairment or is unable to perform her job duties as a result of her chronic beryllium disease. We disagree.
 {¶ 4} Dr. Kahn's reports are some evidence that the claimant's chronic beryllium disease prevents her from returning to her former position of employment as a mill hand operator. Dr. Kahn's reports must be read in the context of the claimant's allowed industrial claim for chronic beryllium disease acquired in the course of her former position of employment. Dr. Kahn's November 12, 2002 report indicates that claimant's employment had exposed her to beryllium dust and that any future exposure was unacceptable. Relator transferred claimant to relator's small business unit in order to eliminate her exposure to beryllium. We agree with the magistrate's assessment that a doctor's advisement to remove someone from potential exposure to beryllium dust is an impairment to one whose occupation has exposed her to beryllium. Dr. Kahn's medical *Page 3 
opinion that "it would be advisable to remove the patient [claimant] from any potential or real further exposure to beryllium dust" is some evidence supporting the commission's finding that claimant's chronic beryllium disease prevents her return to her former position of employment. Therefore, we overrule relator's objection.
 {¶ 5} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Objection overruled; writ of mandamus denied.
McGRATH and WHITESIDE, JJ., concur. WHITESIDE, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 4 
 {¶ 6} In this original action, relator, Brush Wellman, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding R.C. 4123.56(B) wage loss compensation from December 12, 2003 to April 3, 2004, to respondent Christina M. Moomey and to enter an order denying said *Page 5 
Findings of Fact: {¶ 7} 1. In July 1999, Christina M. Moomey ("claimant") was diagnosed with "chronic beryllium disease" by David C. Deubner, M.D., of the Cleveland Clinic Foundation. At the time of her diagnosis, claimant had been employed as a "mill hand operator" by relator since December 13, 1997. Relator is a self-insured employer under Ohio's workers' compensation laws.
 {¶ 8} 2. In July 1999, claimant filed an industrial claim (99-489639) alleging that she had acquired chronic beryllium disease in the course of her employment with relator. Relator fully certified the industrial claim.
 {¶ 9} 3. For reasons that are unclear, the commission came to officially recognize the claim allowance for "inorganic dust pneumoconiosis." July 16, 1999, was recognized as the date of diagnosis.
 {¶ 10} 4. On September 18, 1999, claimant transferred to relator's Small Business Unit ("SBU") in order to eliminate her exposure to beryllium. Claimant worked in the SBU at the same rate of pay that she had earned in the plant as a mill hand operator.
 {¶ 11} 5. On January 5, 2002, the SBU was closed by relator. However, under a program created by relator for its employees who contract chronic beryllium disease, claimant continued to receive her wages for a full year until January 4, 2003.
 {¶ 12} 6. On November 12, 2002, Shakil A. Khan, M.D., wrote:
 Christina Moomey has Chronic Beryllium Disease and this year she had activation of the disease process, which is now controlled after increase in dose of steroids. The immunological response to beryllium has been subsided by aggressive therapy, however, because of her instability, it would be advisable to remove the patient from any potential or real further exposure to beryllium dust. *Page 6 
 {¶ 13} 7. On August 12, 2003, citing Dr. Kahn's November 12, 2002 report and other documents, claimant moved for an award of 30 weeks of compensation for change of occupation under R.C. 4123.57(D).
 {¶ l4} 8. Following an October 1, 2003 hearing, a district hearing officer ("DHO") awarded 30 weeks of R.C. 4123.57(D) change of occupation compensation.
 {¶ 15} 9. Relator administratively appealed the DHO's order of October 1, 2003.
 {¶ 16} 10. Following a November 6, 2003 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order of October 1, 2003. The SHO's order explained:
 There is no two-year statute of limitations for change of occupation.
 It is the order of this Staff Hearing Officer to AWARD thirty (30) weeks of change of occupation effective 9/18/1999.
 * * *
 This Order is based upon the reports of Doctor Dweik (7/9/1999) and Doctor Khan (11/12/2002).
(Emphasis sic.)
 {¶ 17} 11. Relator administratively appealed the SHO's order of November 6, 2003.
 {¶ 18} 12. Following a January 6, 2004 hearing, the three-member commission issued an order that vacated the SHO's order of November 6, 2003 and denied claimant's motion for R.C. 4123.57(D) change of occupation compensation. The January 6, 2004 commission order explains:
 The Industrial Commission notes that this claim is allowed for "inorganic dust pneumoconiosis." There is no medical evidence presented in the claim that attributes the necessity *Page 7 
of a change of occupation to the allowed condition. The report of Dr. Dweik indicates that the injured worker has chronic beryllium disease. The 11/12/2002 report of Dr. Khan supports a change of occupation award for the condition of "chronic beryllium disease." Since the claim is not specifically allowed for beryllium disease, these reports do not support the requested compensation, assuming that an injured worker with beryllium disease otherwise qualifies for the award.
 The Industrial Commission finds that beryllium disease, also known as berylliosis, is not eligible for a change of occupation award pursuant to R.C. 4123.57(D). Beryllium disease is a specifically scheduled occupational disease defined in R.C. 4123.68(V). R.C. 4123.68(V) also states that, "before awarding compensation for partial or total disability or death due to berylliosis, the administrator of worker's compensation shall refer the claim to a qualified medical specialist for examination. . ." The indication that berylliosis is eligible for an award for partial disability is significant because the occupational diseases specifically designated by R.C. 4123.57(D) for a change of occupation award are excluded from eligibility for any partial disability award by provisions of R.C. 4123.68(X), (Y), and (AA). It is clear therefore that the legislature did not intend to provide a change of occupation award for beryllium disease.
 The injured worker argues that beryllium disease qualifies for a change of occupation award under State ex rel. Middlesworth v. Regal Ware, Inc., 93 Ohio St.3d 214, 2001 Ohio 1331. The Industrial Commission disagrees. The court in Middlesworth held that a disease of the respiratory tract resulting from injurious exposures to dust, which is subject to the same limitations as silicosis or coal miners' pneumoconiosis, is eligible for a change of occupation award. Since beryllium disease is eligible for partial disability compensation, it is not subject to the same limitations set forth in R.C. 4123.68 for silicosis and coal miners' pneumoconiosis and Middlesworth does not apply. Middlesworth was only extending a change of occupation award to other dust induced diseases that were not specifically named in the statute. This is not the case with beryllium disease. *Page 8 
 {¶ 19} 13. On April 14, 2004, relator filed in this court a mandamus action challenging the January 6, 2004 decision of the commission. In that action, relator requested a writ ordering the commission to declare that the workers' compensation statutes allow a change of occupation award for berylliosis but deny the motion for R.C. 4123.57(D) compensation on grounds that the motion was untimely filed.
 {¶ 20} 14. On December 7, 2004, this court dismissed the mandamus action. State ex rel. Brush Wellman, Inc. v. Moomey (2004), Franklin App. No. 04AP-374 (memorandum decision).
 {¶ 21} 15. In October 2005, claimant moved that the claim allowance be "clarified" to include "chronic beryllium disease." Claimant also moved for R.C. 4123.56(B) working wage loss compensation.
 {¶ 22} 16. In support of her motion for wage loss compensation, claimant submitted a job search summary covering the period October through December 13, 2003.
 {¶ 23} 17. Documentation accompanying the motion indicated that on December 15, 2003, claimant began full-time employment with Cambridge Home Health Care.
 {¶ 24} 18. In further support of the motion for working wage loss compensation, Dr. Kahn completed a "Medical Report" form dated March 15, 2004. The form asks the physician to "[l]ist all restrictions which are a direct result of the allowed conditions in the claim." In response, Dr. Kahn wrote: "C[hronic] B[eryllium] D[isease]." He indicated that the restrictions are permanent. The form also asks the physician to "list any other *Page 9 
restrictions the injured worker may have." In response, Dr. Kahn wrote: "No exposure to Be[ryllium] Metal."
 {¶ 25} 19. On January 17, 2006, Dr. Deubner wrote: "In the US in scientific publications `chronic beryllium disease' is most popular, and `berylliosis' continues to be used in Europe, but they refer to precisely the same medical condition."
 {¶ 26} 20. Following a January 31, 2006 hearing, a DHO issued an order that vacates the allowance for inorganic dust pneumoconiosis and allows the claim for "chronic beryllium disease." The DHO's order further states:
 GRANT Working Wage Loss Compensation from 12/12/2003 to 4/30/2004 subsequent periods not requested.
 The injured worker had restrictions of no exposure to Beryllium which prevented her from returning to her former position of employment as a mill hand/operator. This job was obtained after several month search for a comparably paying job, based upon the report of Doctor Kahn (3/15/2004).
 The employer's argument that Wage Loss Compensation is not appropriate for Chronic Beryllium Disease is found not well taken, pursuant to the Industrial Commission Order of 1/6/2004, that found that Chronic Beryllium Disease is not eligible for a change of occupation award and is relied upon as precedent.
(Emphasis sic.)
 {¶ 27} 21. Relator administratively appealed the DHO's order of January 31, 2006.
 {¶ 28} 22. Following a May 5, 2006 hearing, an SHO issued an order stating that the DHO's order of January 31, 2006 was being modified. The SHO's order states:
 The Hearing Officer relies upon the restrictions in file for no exposure to beryllium, from Dr. Kahn dated 03/15/2004. The Hearing Officer finds that injured worker's restrictions prevented her from returning to her former position of employment as a mill hand operator. *Page 10 
 The employer's singular argument against the payment of Working Wage Loss benefits was the fact that injured worker's appropriate remedy is a Change of Occupation award rather than Wage Loss benefits. However, this Hearing Officer finds that the Industrial Commission finding of 01/06/2004 clearly indicates that beryllium disease does not qualify for a Change of Occupation award.
 The injured worker's C-86 Motion, filed 10/28/2005, is also GRANTED to the extent of this order. The allowed condition of inorganic pneumoconiosis is VACATED and the CORRECT diagnosis of CHRONIC BERYLLIUM DISEASE is ALLOWED, based upon the report of Dr. Deubner, dated 01/19/2006.
(Emphasis sic.)
 {¶ 29} 23. Relator administratively appealed the SHO's order of May 5, 2006.
 {¶ 30} 24. On May 26, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of May 5, 2006.
 {¶ 31} 25. On September 1, 2006, relator, Brush Wellman, Inc., filed this mandamus action.
Conclusions of Law: {¶ 32} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 33} In relator's brief, it is suggested that relator is presenting a two-pronged challenge to the commission's award of R.C. 4123.56(B) wage loss compensation. Relator's brief states:
 * * * Thus, it is clear the intent of the legislature to compensate individuals who change their occupation to avoid exposure to dust under R.C. 4123.57(D) and not the wage loss statute set forth in R.C. 4123.56(B). In light of this, the Commission abused its discretion in awarding wage loss compensation to Moomey without any evidence to establish *Page 11 
that she was medically impaired from performing her former job as a result of chronic beryllium disease.
(Relator's brief, at 7-8.)
 {¶ 34} Thus, relator suggests in its brief that: (1) an allowed diagnosis of berylliosis (chronic beryllium disease) under R.C.4123.68(V) does not entitle the claimant to apply for R.C. 4123.56(B) wage loss compensation; and (2) the commission's wage loss award is not supported by some evidence showing that claimant's chronic beryllium disease prevents her return to her former position of employment as a mill hand operator with relator.
 {¶ 35} In their briefs, respondents responded to relator's suggested two-pronged challenge. Both respondents extensively briefed the suggested issue of whether a diagnosis of berylliosis under R.C.4123.68(V) entitled the claimant to apply for R.C. 4123.56(B) wage loss compensation. (See Brief of Respondent, Industrial Commission, at pages 6-9; and "Reply [sic] Brief of Respondent, Christina M. Moomey," at pages 1-4.) However, at oral argument before the magistrate, relator's counsel made it clear that relator was not arguing that an allowed diagnosis of berylliosis under R.C. 4123.68(V) does not entitle the claimant to apply for R.C. 4123.56(B) wage loss compensation. Rather, relator solely argues here that the commission's wage loss award is not supported by some evidence showing that claimant's chronic beryllium disease prevents her return to her former position of employment as a mill hand operator with relator.
 {¶ 36} Accordingly, the magistrate will not address the question of whether an allowed diagnosis of berylliosis under R.C. 4123.68(V) does not entitle the claimant to apply for R.C. 4123.56(B) wage loss compensation. *Page 12 
 {¶ 37} A medical inability to secure work comparable in pay to the former position of employment is a prerequisite for wage loss eligibility. State ex rel. Frederick v. Licking Cty. Dept. of HumanServ. (1998), 82 Ohio St.3d 227. When the allowed condition does not medically prevent a return to the former position of employment, the claimant cannot establish that the allowed condition compelled the claimant to accept a lower paying job. Id.
 {¶ 38} Ohio Adm. Code 4125-1-01(A) states:
 (8) "Comparably paying work" means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.
 (9) "Working wage loss" means the dollar amount of the diminishment in wages sustained by a claimant who has returned to employment which is not his or her former position of employment. However, the extent of the diminishment must be the direct result of physical and/or psychiatric restriction(s) caused by the impairment that is causally related to an industrial injury or occupational disease in a claim allowed under Chapter 4123. of the Revised Code.
 {¶ 39} The SHO's order of May 6, 2006 cites to Dr. Kahn's March 15, 2004 report as the medical evidence relied upon to support the SHO's finding that medical restrictions relating to her chronic beryllium disease prevent her from returning to her former position of employment as a mill hand operator.
 {¶ 40} In its argument that the SHO's finding is not supported by some evidence, relator refers to Dr. Kahn's November 12, 2002 report which again states:
 Christina Moomey has Chronic Beryllium Disease and this year she had activation of the disease process, which is now controlled after increase in dose of steroids. The immunological response to beryllium has been subsided by aggressive therapy, however, because of her instability, it *Page 13 
would be advisable to remove the patient from any potential or real further exposure to beryllium dust.
 According to relator:
 * * * Moomey is quite capable of performing the job, but Dr. Kahn has stated that it is advisable to remove the patient from any potential or real further exposure to beryllium dust. He does not state, anywhere in the record, that further exposure to beryllium dust would be harmful. While this opinion might support the decision to change one's occupation, Brush contends that it is not sufficient to support a wage loss application. The argument is just that simple. The Commission's reliance upon Dr. Kahn's report to support a wage loss application was an abuse of discretion.
 * * * Moomey actually has no impairment nor does Dr. Kahn offer an opinion that she is impaired. Instead, Dr. Kahn is predicting, without any basis for his opinion, that further exposure will cause an impairment in the future. * * *
 * * *
 * * * The only evidence before the Commission was the report of Dr. Kahn indicating that she should avoid any potential or real risk by further exposure to beryllium. In other words, Dr. Kahn concedes that the risk of future exposure is unknown. In light of this, the Commission abused its discretion by relying upon that opinion in awarding wage loss compensation. * * *
(Relator's reply brief, at 3-5.)
 {¶ 41} The magistrate disagrees with relator's argument that this court must find the wage loss award unsupported by some evidence.
 {¶ 42} Clearly, Dr. Kahn's medical opinion that "it would be advisable to remove the patient from any potential or real further exposure to beryllium dust," can be viewed as some evidence supporting the commission's finding that claimant's chronic beryllium disease prevents her return to her former position of employment as a mill hand operator with relator. *Page 14 
 {¶ 43} The magistrate notes that the SHO's order of May 5, 2006, indicates that claimant appeared at the hearing with her counsel and that relator's counsel also appeared. Any elicited testimony was not recorded.
 {¶ 44} Contrary to relator's argument, Dr. Kahn's advisement that claimant be removed from further exposure to beryllium dust can be viewed as an advisement or opinion that claimant not return to her former position of employment even though the potential exposure to beryllium dust is not expressly stated by Dr. Kahn to be a risk of returning to the former position of employment. It is clearly implicit in the November 12, 2002 report that claimant's employment had exposed her to beryllium dust and that any future exposure is unacceptable. In fact, the industrial claim is allowed for chronic beryllium disease acquired in the course of claimant's former position of employment with relator. In short, Dr. Kahn's November 12, 2002 advisement should be read in the context of this industrial claim.
 {¶ 45} Relator's argument that claimant has no impairment resulting from chronic beryllium disease lacks merit. Certainly, a physician's advisement to remove oneself from potential exposure to beryllium dust is indeed an impairment to one whose occupation has exposed her to beryllium.
 {¶ 46} The magistrate further notes that the SHO's order of May 5, 2006 states: "The employer's singular argument against the payment of Working Wage Loss benefits was the fact that injured worker's appropriate remedy is a Change of Occupation award rather than Wage Loss benefits." Thus, the SHO's order indicates that the evidentiary value of Dr. Kahn's reports was not seriously challenged by relator at the administrative proceeding. Relator cannot present issues here that relator could have raised *Page 15 
administratively but failed to do so. State ex rel. Quarto Mining Co. v.Foreman (1997), 79 Ohio St.3d 78.
 {¶ 47} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1